855 A.2d 764

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Steven Lewis DUFFEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 28, 2002.

Decided Aug. 18, 2004.

Reargument Denied Oct. 4, 2004.

George S. Bobnak, Esq., Billy Horatio Nolas, Esq., Elizabeth W. Fox, Esq., Philadelphia, for Steven Lewis Duffey.

Kathleen M. Granahan, Esq., Amy Schwed, Amy Zapp, Esq., for the Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Chief Justice CAPPY.

This is an appeal from the denial of post-conviction relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541–46 ("PCRA"). For the reasons set forth herein, we remand for further proceedings consistent with this opinion.

This matter has a convoluted procedural history. Following a jury trial in February 1985, Appellant was convicted of first degree murder [1] and robbery [2] for the death of Kathy Kurmchak.[3] The jury returned the death sentence for the first degree murder conviction.[4] Following the denial of Appel-

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 3701.

3. The facts of the case are set forth more fully at *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988).

4. The jury found one aggravating circumstance—that the defendant committed a killing while in the perpetration of a felony. 42 Pa.C.S. § 9711(d)(6). The mitigating circumstances offered were that the defendant was under the influence of extreme mental or emotional disturbance, *id.* § 9711(e)(2); the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired, *id.* § 9711(e)(3); the age of the defendant at the time of the crime, *id.* § 9711(e)(4); and any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense. *Id.* § 9711(e)(8). The verdict slip did not indicate which mitigating circumstances were found, only that the aggravating circumstance outweighed any mitigating circumstances.

lant's post-trial motions, the trial court imposed a sentence of death on August 4, 1986. John Cerra, Esquire and Paul Ackourey, Esquire (collectively, "trial counsel") represented Appellant through the post-trial motion stage. New counsel, Charles Witaconis, Esquire and Thomas Brown, Esquire, represented Appellant on direct appeal (collectively, "direct appeal counsel") (their appearance does not appear on the docket sheet, however). On October 14, 1988, this Court affirmed Appellant's judgment of sentence. *Duffey*, 548 A.2d at 1178.

On September 22, 1994, the Governor signed a death warrant scheduling Appellant's execution for the week of December 4, 1994. The Pennsylvania Capital Case Resource Center ("PCCRC") sent the trial court judge a letter dated November 15, 1994 that included the original and a courtesy copy of Appellant's "Pro Se Motion for Stay of Execution to Identify and Appoint Counsel and to Permit Counsel Time to Prepare a PCRA Petition". On November 18, 1994, the trial court denied the motion, concluding that it lacked jurisdiction. On November 20, 1994, Appellant filed a Motion for Reconsideration, which the trial court denied on November 22, 1994. On that same day, Appellant filed a "Renewed Motion for Stay of Execution to Permit Counsel Time to Prepare PCRA Petition" with a PCRA Petition attached ("Renewed Motion"). The Renewed Motion was an unsigned pleading; the front page indicated that Appellant filed it pro se. On November 28, 1994, Appellant commenced habeas corpus proceedings in federal court. On November 29, 1994, the trial court denied the Renewed Motion. While the trial court's order did not expressly dispose of the PCRA petition attached to the Renewed Motion, the trial court's opinion made it clear that the court found the attached PCRA petition to be "frivolous on its face and without merit".

PCCRC attorneys Yvonne R. Bradley, Esquire and David Wycoff, Esquire, "prepared" notices of appeal from the trial court's orders of November 18, 1994 (denying Appellant's Motion for a Stay of Execution) and November 29, 1994 (denying the Renewed Motion), although the appeals purported to be "for Steven Duffey, pro se". On December 5, 1994,

this Court denied (1) Appellant's pro se Petition for Writ of Prohibition and Exercise of King's Bench Powers; (2) Emergency Motion for Stay of Execution; and (3) appeals from the orders of the trial court denying stays of execution. That same day, the federal court granted Appellant's request to proceed in forma pauperis and his request for appointment of federal habeas corpus counsel.[5]

On or about January 9, 1995, the record reflects that Richard Bernstein, Esquire entered his appearance for Appellant (although no such notation appears on the docket). On May 8, 1995, while the matter was still pending in federal court, Appellant, now with counsel's assistance, filed an Amended Petition for PCRA relief. After the federal litigation ended, the Commonwealth moved to strike the Amended Petition on the basis that the trial court had previously denied Appellant's PCRA petition on November 22, 1994. On December 2, 1996, the trial court granted the Motion to Strike. Appellant appealed that order to this Court, and we remanded the matter to the trial court for consideration of the merits of Appellant's Amended Petition for PCRA relief. *Commonwealth v. Duffey*, 551 Pa. 675, 713 A.2d 63 (1998).[6]

5. The district court also issued a temporary stay of execution, but subsequently denied the request for a stay and vacated the temporary stay it entered on December 5, 1994. Appellant appealed to the Court of Appeals for the Third Circuit, which granted a temporary stay of execution. Following oral argument, the Court of Appeals reversed the district court, but subsequently granted reargument *en banc*. Prior to reargument, Appellant moved to dismiss the appeal as moot because the district court's appointment of counsel to represent him changed the procedural posture of the case pursuant to applicable federal law. He also asserted that the appeal was moot since the death warrant issued for the week of December 4, 1994 had expired. The Court of Appeals heard oral argument and agreed with Appellant. Thus, on May 22, 1996, it dismissed the appeal and vacated the district court's order denying the stay of execution. See *Duffey*, 551 Pa. 675, 713 A.2d 63, 67 n. 4.

6. We concluded in pertinent part that although PCCRC was assisting Appellant in preparing his first PCRA petition, that petition was filed pro se; the attorneys for PCCRC who signed the notices of appeal became Appellant's attorneys of record for the appeal when they filed them on November 30, 1994; and Appellant was still unrepresented when the trial court denied the Renewed Motion on November 29, 1994, and thus the trial court erred when it held that Appellant's first

A hearing on the amended PCRA petition was scheduled for February 19, 1999. At that hearing, Appellant submitted a "Motion for Summary Grant of Relief Under the Post–Conviction Relief Act" in which he raised several issues.[7] During the course of that hearing, and subsequently in an order and opinion dated September 20, 1999, the trial court denied all of the relief requested in that Motion and hearing. Due to the number of issues raised as well as the volume of testimony that Appellant sought to produce, the hearing was continued. Additional hearings on the Amended PCRA Petition were held on September 20–24, 1999 and December 13–17, 1999. Ultimately, the PCRA court denied the PCRA petition.

Appellant raises several claims of trial and appellate counsels' ineffectiveness. Appellant is presenting a "layered" claim of ineffective assistance of counsel. We recently set forth the standard for such layered ineffective assistance of counsel claims in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003).

Pursuant to *McGill*, when a court is faced with a layered claim of ineffective assistance of counsel, the only viable ineffectiveness claim is the one related to the petitioner's prior appellate counsel. *See id.* at 1022. To preserve a claim of ineffectiveness, the petitioner must plead in his PCRA petition that such appellate counsel was ineffective for failing to raise all prior counsel's ineffectiveness. *Id.* The petitioner must also present argument on each prong of the *Pierce*[8] test as to appellate counsel's deficient representation. *McGill*, 832 A.2d at 1022.

PCRA petition was counseled and not pro se. We also determined that the trial court erred in denying the pro se PCRA petition without appointing counsel, and then granting the Commonwealth's Motion to Strike the Amended PCRA petition. Instead, the trial court should have allowed Appellant to litigate the Amended PCRA petition with the assistance of counsel.

7. While this pleading does not appear on the docket, it was acknowledged by the trial court and is appended to both parties' briefs to this Court.

8. *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203 (2001).

■ In *McGill*, we then elaborated on how a petitioner must present his claim of ineffectiveness. Consistent with *Pierce*, a petitioner must prove the three prongs of appellate counsel's ineffectiveness, namely, that the claim has arguable merit, that appellate counsel lacked a reasonable basis for his or her chosen course, and that the petitioner was prejudiced thereby, i.e., that there is a reasonable probability that the outcome of the proceedings in which appellate counsel was the attorney of record would have been different. *Id.* at 1022–23. To demonstrate the first prong (arguable merit), the petitioner must set forth all three prongs of the *Pierce* test as to *trial* counsel's action or inaction. *Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003). If the petitioner does not satisfy any one of the three prongs as to trial counsel's ineffectiveness, he will have failed to establish an ineffectiveness claim as to appellate counsel, since a claim of appellate counsel ineffectiveness is merely a derivative claim related to trial counsel's ineffectiveness. *Id.* But if the arguable merit prong of appellate counsel's ineffectiveness is established, i.e., the petitioner demonstrates trial counsel's ineffectiveness, the inquiry proceeds to the remaining two prongs of the *Pierce* test as to appellate counsel's ineffectiveness. *Id.*

■ As a threshold matter, then, we must determine whether Appellant has preserved his claims. In his amended PCRA petition, Appellant asserts that he did not receive effective assistance of trial counsel as to his several claims (Amended Petition at 108) and that his appellate counsel was ineffective insofar as they failed to raise each issue addressed in the amended PCRA petition. Amended Petition at 110. Thus, we conclude that Appellant has properly pled his claims. See *Rush,* 838 A.2d at 657 n. 5.

Additionally, as to the claims we address herein, in his brief to this court, Appellant presents argument as to trial counsel's and appellate counsel's deficient representation. Specifically, he addresses all three prongs of the *Pierce* test as to trial counsel and direct appeal counsel. Consequently, as Appellant has adhered to the pleading requirements, we will first consider the arguable merit prong of the appellate counsel

claim. In other words, we will first address the claim related to trial counsel's conduct, since it is only if trial counsel was ineffective that the remaining prongs related to appellate counsel's conduct need to be addressed.[9,10]

As a final matter, we note that to be eligible for PCRA relief, the petitioner must plead and prove that an issue has not been previously litigated. 42 Pa.C.S. § 9543(a)(3).

██ Initially, we will address Appellant's challenges to the inclusion and exclusion of certain venirepersons in the jury. Appellant first claims that trial counsel was ineffective by failing to move to strike juror Richard Fagerlin for cause and in failing to use a preemptory strike against this juror, and that appellate counsel was ineffective for failing to preserve this issue. Appellant asserts that Fagerlin was improperly included on the jury panel because he was predisposed to impose the death penalty.[11] Appellant contends that the seating of a juror who would vote for death in every murder case violates the Sixth and Fourteenth Amendments to the United States Constitution. See *Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Appellant further asserts that the seating of such a juror violates the Eighth Amendment right to a reliable and individualized capital sentencing proceeding. See *Woodson v. North Car-*

9. Appellant's first PCRA petition was filed on November 22, 1994, and the Amended Petition was filed May 8, 1995. Therefore, the claims raised in these petitions are subject to the PCRA which was in effect prior to the 1995 amendments. See *Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 37 (2002) (PCRA claims subject to 1995 version of the PCRA when the initial petition was filed prior to effective date of 1995 amendments, i.e., prior to January 16, 1996).

10. Appellant also asserts that under the pre–1995 version of the PCRA, a petitioner is entitled to relief for any claim "which would require the granting of Federal habeas corpus relief", 42 Pa.C.S. § 9543(a)(2)(v) (*Repealed*, 1995, Nov. 17, P.L. 1118, No. 32 (Spec. Sess. No. 1), § 1), and that all of the claims that he raises fall within that category. Given our resolution of the issues we address herein, we need not delve further into Appellant's interpretation of the pre–1995 version of the PCRA.

11. The PCRA court held a hearing relative to this claim and denied relief but did not specifically address this issue in its opinion. Nonetheless, we find it unnecessary to remand to the PCRA court as we find no merit in Appellant's contentions.

*olina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality) (indicating that imposition of a death sentence for all murders does not allow for individualized sentencing that considers mitigating factors). Appellant, as the party seeking exclusion of the juror, has the burden of establishing that the juror was not impartial. *Wainwright v. Witt,* 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

■ Appellant points to the fact that Fagerlin stated: "The way I feel, if a man commits a murder—a crime—he should be put to death." N.T. 1/22/85 at 175; accord N.T. 1/22/85 at 164–65 ("If the person did it, and he is found guilty, I believe he should" receive the death penalty.). Appellant claims that Fagerlin never stated that he could overcome his belief and apply the court's instructions, only that he would "try", N.T. 1/22/85 at 178; that he was unable to say with certainty that he would not draw adverse inferences if Appellant failed to testify, N.T. 1/22/85 at 180–82; and that he expressed concern about his ability to return a not guilty verdict, stating only that he "guess[ed]" he could do so. N.T. 1/22/85 at 179.

When the entire testimony is read in context, it is evident that the seating of this juror was not improper. Fagerlin repeatedly indicated that he could follow the judge's instructions. N.T. 1/22/85 at 176–77, 178,180–82. Trial counsel recalled that he believed that Fagerlin would be a fair and impartial juror, as Fagerlin impressed counsel as someone who was "deliberate" and "thoughtful", the type of man who would not make a "snap judgment" and "someone who was really going to listen very carefully". N.T. 12/17/99 at 42–43. Counsel also believed that Fagerlin made an earnest effort, noting that Fagerlin stated "I'll try, I really will. He wasn't just saying I'll try...." N.T. 12/17/99 at 42. Appellant cannot establish that trial counsel was ineffective, and consequently, his claim of appellate counsel's ineffectiveness necessarily fails.

■ Next, Appellant raises several ineffectiveness issues with regard to the alleged improper exclusion of several venirepersons who were improperly dismissed for cause on the Commonwealth's motion when they voiced reservations about

imposition of the death penalty. The exclusion of venirepersons simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction is unconstitutional. *Witherspoon v. Illinois,* 391 U.S. 510, 522, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). A prospective juror may be excluded for cause when his views on capital punishment are such as would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Commonwealth v. Cox,* 556 Pa. 368, 728 A.2d 923, 929 (1999). The trial court has the discretion to strike a juror for cause, and that decision will not be disturbed absent an abuse of discretion. *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 442 (1999). After reviewing the relevant testimony, we find no merit in these claims.

 Appellant acknowledges that trial counsel properly objected to the dismissal of Rose Mark and Lynn Judge; therefore, this is not a "layered" ineffectiveness claim under *McGill.* Appellant must still establish the three prongs of the *Pierce* ineffectiveness test in relation to appellate counsel's deficient performance. Appellant claims that appellate counsel was ineffective for failing to raise the *Witherspoon* errors with regard to these jurors. We find that these claims lack arguable merit. Mark's testimony indicated that she would "more than likely" exclude the death penalty from her deliberations and that it might affect her judgment in rendering a verdict on guilt or innocence. N.T. 1/22/85 at 208–211. Similarly, Judge expressed her opposition to the death penalty and repeatedly indicated that she did not believe that she could impose it. See N.T. 1/24/85 at 110, 112, 124, 125, 127. Consequently, these jurors were substantially impaired and were properly stricken for cause. Because the claims lack arguable merit, the assertion of appellate counsel ineffectiveness fails.

 Appellant also assigns as error trial counsel's failure to object to the dismissal of prospective juror Rosalie Walters, and appellate counsel's failure to preserve this issue. Upon

questioning, Walters indicated to defense counsel that although she had "religious, moral or personal objections" to the death penalty, she could follow the court's instructions. N.T. 1/23/85 at 180. Walters answered affirmatively when the prosecutor asked if she would find Appellant guilty if the Commonwealth met its burden of proof. N.T. 1/23/85 at 200. The prosecutor then asked:

Q. Is there just a little bit of hesitation?

A. Yes.

Q. Okay, and tell me what it is.

A. I don't know if I could give the death penalty.

Q. You don't think you could deal with the death penalty?

A. Deal with it.

Q. Let me ask you a few questions about that. Do you have any moral, religious, or conscientious objections to the death penalty as you're sitting here thinking about it now?

A. I guess moral.

N.T. 1/23/85 at 200. Subsequently, Walters stated:

A. I'm not opposed to the death penalty per say [sic], it's hard to explain.

Q. Let's try, all right? Now, do you have some moral problems with the death penalty?

A. Yes, yes.

N.T. 1/23/85 at 201. Afterwards, Walters again stated that she could impose the death penalty if her verdict was guilty and that she could follow the instructions of the judge. N.T. 1/23/85 at 205–08. Nonetheless, the voir dire indicates that Walters was somewhat unclear as to her convictions regarding imposition of the death penalty, and these concerns could have substantially impaired her ability to function as an impartial juror. See Cox, supra. The trial court was in the best position to make that determination. We therefore cannot say that the court abused its discretion in dismissing this prospective juror for cause. Accordingly, Appellant has not demonstrated that trial counsel was ineffective for failing to object to

the dismissal of this juror, and Appellant's claim of appellate counsel ineffectiveness fails.

Next, we turn to the claims Appellant raises regarding the penalty phase. We find that one of these claims may entitle Appellant to relief and that a remand is necessary for an evidentiary hearing.

Appellant contends that his trial and appellate counsel were ineffective for failing to challenge the prosecution's impermissible use of Appellant's silence at a psychiatric examination against him, after promising him that it would not do so.[12] During pre-trial proceedings, the defense considered offering the defense of insanity and pursuant to then-Pa.R.Crim.P. 305 (renumbered Pa.R.Crim.P. 573), notified the Commonwealth, and turned over reports of the defendant's experts. Prior to trial, Appellant, in the presence of his counsel, was evaluated by the Commonwealth's psychiatrist, Dr. John Hume. Dr. Hume advised Appellant that "[y]our rights permit you to refuse to answer any questions you might choose to so if something comes up that you don't want to respond to, that's your perfect right and that doesn't necessarily draw any particular inferences or not." Tr. of Proceedings at Psychiat-

12. The PCRA court declined to address the claim that references to Appellant's post-arrest silence were improper, deeming it to have been previously litigated. N.T. 2/19/99 at 95–96. We disagree. In the amended PCRA petition, counsel raised two instances of alleged improper references to Appellant's post-arrest silence: those made by Trooper Carlson after Appellant's arrest and those made by Dr. Hume. At the PCRA hearing, the parties focused on the references made by Trooper Carlson. Counsel for the Commonwealth argued that this issue had been previously litigated because during the direct appeal, this Court concluded that there were no impermissible references to Appellant's silence during the trial. N.T. 2/19/99 at 90; N.T. 12/17/99 at 140. However, the issue we addressed on direct appeal was completely different. During closing arguments, defense counsel claimed that the evidence was insufficient to support the crime of attempted rape. Counsel for the Commonwealth responded that the testimony established that the victim was neat and presumably would not leave a button undone on her pants as she was found. He further stated that this testimony was uncontradicted. We concluded that the prosecutor's remarks were not impermissible references to Appellant's silence, nor did they prejudice Appellant since he was not convicted of attempted rape. *Duffey*, 548 A.2d at 1184. The issue raised here is materially different, and has not been previously litigated.

ric Examination, 1/25/85 at 2. Appellant thereafter did not respond to several of Dr. Hume's questions. At trial, Appellant did not take the stand, nor present an insanity defense. He did, however, present mental health evidence in mitigation during the sentencing phase, including 42 Pa.C.S. § 9711(e)(3) (the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired). The Commonwealth, in turn, called Dr. Hume to testify to rebut those mitigating circumstances. Dr. Hume testified, in pertinent part, that Appellant was someone who had the capacity to make voluntary choices and that he was able to control his impulses and behavior:

> Q. Is there anything that says that he unconsciously cannot deal with that, in your interpretation of his reports, the clinical history and your evaluation and all of the tests that have been taken, that says he cannot control his behavior whatsoever, he does this unconsciously?
>
> A. There was nothing in the records or in the evaluation that I did which suggested that.
>
> Even in the examination that I did, there were some questions which he declined to answer relating to his mental capacity, his cognitive abilities, for which there was no particular reason that he could not or should not have answered them. He simply chose not to.
>
> Q. That indicates what, Doctor?
>
> A. A voluntary decision not to in that part of the exam answer the questions.

N.T. 2/7/85 at 209–10.

During his closing argument, the prosecutor emphasized that Appellant could conform his conduct to the requirements of law, when he chose to do so:

> The man has an anti-social personality, summed up in plain, ordinary English, he's a bad guy. He doesn't obey the law. He chooses when he obeys the law. Remember that. He chooses the times when he obeys the law.

Steven Duffey says to himself, I am judge of when I obey the law and when I don't. That is a conscious, deliberate decision on his part. It reflects a mind that is capable of evaluating the nature and circumstances of what's going on. And if he chooses, he will do it; if he doesn't, he won't. * * *

[D]oes he have the ability to make the choice? Is that ability to make the choice impaired? That is the key question, not whether he did or he didn't, one way or the other, but is that ability, that cognitive ability impaired? The answer has been-The only answer that we received here, the only person that's answered that question from the stand has been Dr. Hume. And he said, no. He has the capacity to conform his conduct to the requirements of law. He has the capacity, except he chooses not to when he wants to. That, ladies and gentlemen, is no excuse to give him life imprisonment.

N.T. 2/7/85 at 241, 243.

Appellant contends that the use of his silence against him to obtain a death sentence, after he had been assured that he could exercise his right to silence without it being used against him, violated his due process and Fifth Amendment rights. Appellant relies on *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), for the proposition that the use of a defendant's post-*Miranda* warnings silence to rebut a mental health defense violates due process.

In *Doyle,* the defendants offered an exculpatory story for their participation in a drug transaction. On cross-examination, the prosecutor impeached their testimony by asking them why they had not explained their conduct at the time of arrest. The United States Supreme Court held that such cross-examination was fundamentally unfair and violated the Due Process Clause of the Fourteenth Amendment. The unfairness derived from the implicit assurance in the *Miranda* warnings "that silence will carry no penalty." 426 U.S. at 618, 96 S.Ct. 2240. Since its holding in *Doyle,* the High Court has

repeatedly reaffirmed that breaching the implied promise of the *Miranda* warnings violates the Due Process Clause. See *Wainwright*, supra (collecting cases). Appellant argues that this rule applies equally to the penalty phase. *Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).[13]

The Commonwealth contends that *Doyle* and *Wainwright* are distinguishable because Appellant, unlike the defendants in those cases, did not remain silent, but waived his right to silence by choosing to answer some of Dr. Hume's questions. The Commonwealth asserts that once an individual waives that right, anything he says can be used against him, including his choice not to answer certain questions. The sole authority the Commonwealth cites in support of this assertion is its selective citation of a footnote in *Doyle*, in which the High Court noted that an analogous situation occurred in *Johnson v. United States*, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), and further stated:

> A defendant who testified at his trial was permitted by the trial judge to invoke the Fifth Amendment privilege against self-incrimination in response to certain questions on cross-examination. This Court assumed that it would not have

13. Appellant also discusses the High Court's more recent decision in *Wainwright*, wherein the Court relied on *Doyle* to explain that the prosecution cannot use post-arrest, post-*Miranda* silence in order to prove sanity in attempting to rebut an insanity defense. The Court rejected the prosecutor's argument that the defendant's exercise of his right to remain silent was probative of his sanity and that *Doyle* did not control because proof of sanity is significantly different from proof of the commission of the underlying offense:

> We find no warrant for the claimed distinction in the reasoning of *Doyle* and of subsequent cases. The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise to overcome a defendant's plea of insanity. In both situations, the State gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.

*Wainwright*, 474 U.S. at 292, 106 S.Ct. 634.

been error for the trial court to have denied the privilege in the circumstances, see *id.*, at 196, 63 S.Ct. at 553, in which case a failure to answer would have been a proper basis for adverse inferences and a proper subject for prosecutorial comment.

*Doyle,* 426 U.S. at 619 n. 9, 96 S.Ct. 2240.

The remainder of this footnote, however, explains that due process requirements make such references to silence impermissible:

But because the privilege has been granted, even if erroneously, "the requirements of a fair trial" made it error for the trial court to permit comment upon the defendant's silence. *Ibid.* "An accused having the assurance of the court that his claim of privilege would be granted might well be entrapped if his assertion of the privilege could then be used against him. His real choice might then be quite different from his apparent one.... Elementary fairness requires that an accused should not be misled on that score." *Id.* at 197, 63 S.Ct. at 553.

*Id.*

 Moreover, this Court has recognized that "[i]t is irrelevant whether a defendant elects to assert the constitutional right to remain silent from the outset or makes a voluntary statement and then asserts the right." *Commonwealth v. DiPietro,* 538 Pa. 382, 648 A.2d 777, 779 (1994) (citations omitted). The reference to post-arrest silence is not permitted. Nor may a prosecutor make references to the defendant's resumption of silence. *Id.*

 In this matter, Dr. Hume commented specifically on Appellant's silence at the examination. Relying on that expert testimony, the prosecutor then impermissibly referred to Appellant's silence and suggested damaging inferences from that silence. This clearly was error. Accordingly, we find that the underlying claim of trial counsel ineffectiveness has arguable merit.[14]

14. Mr. Justice Castille's concurring and dissenting opinion faults the majority for applying *Wainwright* to this case since, in his view, *Wain-*

We also find that Appellant was prejudiced by the reference, i.e, there is a reasonable probability that the outcome of the proceedings would have been different. It is evident that the prosecutor capitalized upon the expert testimony regarding Appellant's silence during the closing argument. The jury found several mitigating circumstances, but concluded that they did not outweigh the single aggravating factor. Given the expert's impermissible reference to Appellant's silence as well as the prosecutor's use of that expert testimony in his closing, we find that Appellant was prejudiced. *See Doyle, supra; see also DiPietro,* 648 A.2d at 781 (prejudice from failure to issue curative instructions after prosecutor's reference to post-arrest silence was compounded by prosecutor's exploitation of Appellant's silence during closing argument).

But we cannot at this juncture address the reasonable basis of trial counsel's action. At the PCRA hearing, the PCRA court concluded that this issue had been previously litigated, *see supra,* n. 12, and therefore precluded Appellant's counsel from asking in-depth questions regarding trial counsel's strategy in failing to object to the references to Appellant's silence. N.T. 12/17/99 at 140–43.[15] Thus, Appellant's counsel could not

*Wright* "represented a significant extension of the *Doyle* rule" regarding use of a defendant's post-Miranda silence. Concurring and Dissenting Opinion at 207, 855 A.2d at 776. Of course, counsel's actions must be judged according to existing law at the time of trial, and counsel cannot be deemed to be ineffective for failing to predict changes or future developments in the law. *See Commonwealth v. Todaro,* 549 Pa. 545, 701 A.2d 1343, 1346 (1997). We think it plain that *Wainwright* did not announce a change in the law, as the dissent suggests. *See Thomas v. State of Indiana,* 910 F.2d 1413, 1416 (7th Cir.1990) ("*[Wainwright]* did not announce a new rule but merely made explicit what was inescapably implicit in *Doyle v. Ohio* ...."). In any event, our decision today is based on Doyle, which was the governing law at the time of Appellant's trial. Pursuant to *Doyle,* the Commonwealth was not permitted to use Appellant's silence against him following *Miranda* warnings.

15. After the Commonwealth interposed an objection to PCRA counsel's line of questioning, the PCRA court allowed PCRA counsel to continue so that the PCRA court could hear the full question. PCRA counsel proceeded as follows:

Q. Do you recall a reason for not objecting at the penalty phase when Dr. Hume drew inferences which he, himself, had indicated to Mr. Duffey would not be drawn from his refusal to answer questions at the evaluation?

elicit whether trial counsel had a reasonable basis for his actions, and pursuant to *McGill*, this court should refrain from gleaning whether such a reasonable basis exists. *McGill*, 832 A.2d at 1022 (only when the record clearly establishes that the act or omission of trial counsel was without a reasonable basis should the court resolve the reasonable basis prong absent a remand for an evidentiary hearing as to counsel's strategy).

In summary, Appellant's assertion that trial counsel should have objected to the references to Appellant's post-arrest silence has arguable merit, and prejudice resulted thereby. But we cannot address the reasonable basis of trial counsel's failure to preserve this issue, and consequently, cannot address this aspect of the ineffectiveness of appellate counsel. Therefore, a remand for an evidentiary hearing addressing the reasonableness of trial counsel's actions is necessary. Moreover, at this hearing, Appellant should present testimony related to appellate counsel's conduct, in order to prove his claim of appellate counsel ineffectiveness. We direct that an evidentiary hearing take place encompassing both questions and that the trial court complete the hearing and issue a supplemental opinion within ninety (90) days.

For the reasons stated above, we find that a limited remand is necessary for an evidentiary hearing including findings of facts and conclusions of law as to the reasonableness of trial and appellate counsel's actions. The remainder of the issues that Appellant raises in this appeal shall be held in abeyance until resolution of this issue. This Court will retain jurisdiction over the matter.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE files a concurring and dissenting opinion in which Justice EAKIN joins.

A. I don't recall that.
Q. Do you recall a reason? Why didn't you object?
N.T. 12/17/99 at 140. At this point, the Commonwealth attorney again interposed an objection, which the PCRA court sustained.

Justice SAYLOR, concurring.

I join the majority opinion, subject only to the following perspectives:

With respect to the majority's treatment of Appellant's layered due process claim centered on a testimonial reference by the Commonwealth's expert witness to Appellant's silence during the course of a psychiatric examination, I would only add that the claim touches on a complex area of the law that the briefing presented in this appeal has failed to capture, involving the contingent, limited waiver that may accrue on a criminal defendant's proffer of a defense dependent on his own presentation of mental health evidence, and the Commonwealth's concomitant ability to conduct its own compelled psychiatric examination on a pre-trial basis in conjunction with such a proffer. *See generally Estelle v. Smith*, 451 U.S. 454, 465–66, 101 S.Ct. 1866, 1874, 68 L.Ed.2d 359 (1981). Because there are a good many nuances and open issues in this arena, I believe that the Court's holding is best read in light of the Commonwealth's expert's unusual statement to Appellant, during the course of what appears to have been a compelled psychiatric examination,[1] to the effect that Appellant retained an ability to withhold his cooperation on a question-by-question basis without penalty. *See* Majority Opinion, *op.* at 198–200, 855 A.2d at 772. Particularly as this unusual commitment renders the case amenable to resolution under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), without reference to the limited waiver principle and decisions, *see* Majority Opinion, op. at 202–05, 855 A.2d at 774–75 (quoting *id.* at 618 n. 9, 96 S.Ct. at 2245 n. 9 ("[B]ecause the privilege has been granted, even if erroneously, 'the requirements of fair trial' made it error for the trial court to permit comment upon the defendant's silence.")), I read the majority's holding in this regard as being fairly narrow.

1. The docket sheet does not contain a reference to a court order requiring the examination, but transcripts of the pre-trial proceedings contain trial counsel's admonition that Appellant would not be made available for examination in the absence of such an order.

Second, although the majority finds that trial counsel failed to object to a constitutionally impermissible reference to Appellant's silence that substantially undermined confidence in the reliability of the penalty verdict, it holds that the case must nonetheless be remanded for determination of whether counsel may have had a reasonable basis for permitting this taint to occur unopposed (and go unpreserved). As the majority observes, this approach represents the prevailing consensus of the Court, and was devised as a means of compromising the various views of Justices concerning the proper disposition of a layered claim involving counsel's forfeiture of a meritorious issue.[2]

While the Court has thus implemented a general approach, the answers to some fundamental questions remain undeveloped, such that additional attention undoubtedly will be required at least at some point. For example, it would not seem fair to state as a general proposition that a post-conviction petitioner who cannot present testimony from counsel who is (or are) unavailable at the post-conviction stage simply cannot prevail, although the petitioner is nevertheless able to establish the arguable merit and prejudice components of his claim, as well as the absence of any reasonable strategy appearing on the face of the record. To the contrary, at least in some cases, the inference of ineffectiveness arising from such circumstances should prevail over the countervailing presumption that counsel's stewardship was constitutionally adequate, despite the absence of counsel's testimony, but depending on the strength of the inference. *Cf. Commonwealth v. Grant*, 572 Pa. 48, 62–63 & nn. 12–13, 813 A.2d 726, 734–35 & nn. 12–13 (2002). The reality is simply that it is not possible to devise a single approach to these sorts of matters that will fairly accommodate all circumstances—there will remain cases that can and must be decided without the benefit of the testimony

**2.** *See, e.g., Commonwealth v. Ford*, 570 Pa. 378, 392–93, 809 A.2d 325, 334 (2002) (opinion announcing the judgment of the Court); *id.* at 400–14, 809 A.2d at 338–47 (Castille, J., dissenting); *id.* at 394–97, 809 A.2d at 335–37 (Newman, J., concurring); *id.* at 397–400, 809 A.2d at 337–38 (Saylor, J., concurring); *id.* at 414–16, 809 A.2d at 347–48 (Eakin, J., dissenting).

of counsel; cases in which the inference of ineffectiveness arising from the record is so weak that it will be incumbent upon the petitioner to present credible testimony of counsel that his actions were bereft of strategy if he is to prevail; and cases in which the inferences are so strong as to overcome the presumption of effectiveness, such that it should be incumbent upon the Commonwealth to present counsel's testimony as to strategy if it is to prevail.

In light of the above, I would frame the remand in the present case somewhat more generally than the Court's present mandate. Rather than specifically charging Appellant with the responsibility to present testimony from his trial and appellate counsel, I would merely indicate that the hearing is to be afforded to allow the opportunity for either party to elicit the testimony, in support of their respective cases. I would also indicate that, just as the PCRA court would be free to discern a reasonable strategy if one were readily apparent from the record,[3] it is also free to consider fair inferences arising from an absence of any reasonable strategy appearing as of record, as well as the now-established arguable merit and prejudice associated with Appellant's claim.

Justice CASTILLE, concurring and dissenting.

Although I concur in the Majority Opinion's resolution of appellant's collateral claims concerning the guilt phase of trial, I respectfully dissent from its decision to remand for an evidentiary hearing on appellant's layered claim of ineffective assistance of counsel arising from the prosecution's reference, during the penalty phase, to appellant's selective invocation of a right to remain silent during a psychiatric examination. In finding that this claim has arguable merit, the Majority imposes an absurd requirement that, when this case was tried in 1985, appellant's trial counsel was obliged to anticipate that, in the next year, the U.S. Supreme Court would issue its decision in *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), which extended the rule first announced in

3. Implicit in the Court's present decision, however, is that there is no such strategy apparent from the record in this case.

*Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), concerning restrictions upon the use of post-*Miranda*[1] silence. In addition to relying upon a point of law established in the 1986 decision of *Wainwright v. Greenfield,* the Majority invokes an even later decision from this Court, *Commonwealth v. DiPietro,* 538 Pa. 382, 648 A.2d 777 (1994), for two propositions essential to its holding that a remand is required: (1) first, it cites *DiPietro* to reject the Commonwealth's claim that appellant did not remain silent, but selectively answered questions; (2) second, it cites *DiPietro* (as well as *Doyle*) as controlling the question of whether the reference was such as to sustain appellant's burden of proving prejudice under *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Majority op. at 203–05, 855 A.2d at 775, 776.

The trial in this case occurred in January and February of 1985; the penalty phase comments of the prosecutor, to which appellant now claims counsel, using foresight, was obliged to object, occurred on February 7, 1985. The fundamental flaw in appellant's claim of counsel ineffectiveness, and the consequent fundamental error in the Majority's analysis, is that it depends upon a case, *Wainwright v. Greenfield,* which did not exist in February of 1985. As Mr. Justice (now Chief Justice) Cappy noted in *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 451 (1999), it is a settled rule that "we will not deem counsel ineffective for failing to anticipate a change in the law." The cases recognizing this fundamental principle are legion and the principle bedrock.

The requirement that counsel's conduct be viewed in light of contemporaneously-governing law is central to any rational assessment of the constitutional reasonableness of counsel's actions. As this Court stated in *Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33 (2002):

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. This is so because it is "all too tempting" for a defendant to second-guess counsel, and "all too easy" for a court to deem a particular act or omission unreasonable merely because counsel's overall strategy did not achieve the result his client desired. *Id.See also Lockhart [v. Fretwell],* 506 U.S. [364,] 372, 113 S.Ct. 838, 122 L.Ed.2d 180 [ (1993) ] (*Strickland* Court adopted "the rule of contemporary assessment" because it recognized that "from the perspective of hindsight there is a natural tendency to speculate as to whether a different trial strategy might have been more successful"); *Waters v. Thomas,* 46 F.3d 1506, 1514 (11th Cir.1995) ("nothing is clearer than hindsight—except perhaps the rule that we will not judge trial counsel's performance through hindsight").

819 A.2d at 51. Neither lawyers nor trial judges are expected or required to be clairvoyant. Deeming counsel to be ineffective for failing to forward an objection based upon a principle of law that was not then-governing is the very essence of the sort of perverse second-guessing which is not permitted under *Strickland* and its progeny.

On the performance prong of the *Strickland* test, the only proper question here is whether, under the governing federal law existing in February of 1985, trial counsel unreasonably failed to forward the objection appellant now alleges that he was obliged to forward. As a matter of law, the fact that an arguably similar claim succeeded the next year in the U.S. Supreme Court cannot control the *Strickland* performance question. Notwithstanding the Majority's insistence otherwise, *Doyle* and *Wainwright v. Greenfield* are very different cases, and while *Wainwright v. Greenfield* certainly derived from the teaching of Doyle—as all but the most earth-shattering of Supreme Court decisions find their roots in some past precedent—*Wainwright v. Greenfield* represented a significant extension of the Doyle rule. *Wainwright v. Greenfield* did not, for example, consist of a per curiam order accompanied by the notation, "*See Doyle.*" In *Doyle,* the U.S. Su-

preme Court determined that when a defendant's silence follows upon issuance of *Miranda* warnings, it is "insolubly ambiguous," and cannot be used against him at trial for impeachment purposes. Extending the rule announced in *Doyle, Wainwright v. Greenfield* held that the prosecution cannot employ the defendant's post-arrest, post-*Miranda* silence as evidence of his sanity, in an attempt to rebut an insanity defense.

*Wainwright v. Greenfield* involved federal habeas review of a Florida state prisoner's conviction for sexual battery. The defendant exercised his right to remain silent after he was arrested and issued *Miranda* warnings. He later pleaded guilty by reason of insanity, a plea which, under Florida law, required the prosecution to prove his sanity beyond a reasonable doubt. In an attempt to satisfy that burden, the prosecution introduced testimony from two police officers who described post-arrest instances in which the defendant had exercised his right to remain silent and expressed a desire to consult with counsel before answering any questions. Subsequently, in his closing argument, the prosecutor reviewed the officers' testimony and suggested that the defendant's refusals to answer questions without consulting counsel showed a degree of comprehension that was inconsistent with his claim of insanity. The defendant was found guilty.

On habeas review of the defendant's properly preserved and exhausted claim that the use of his silence to rebut the claim of insanity violated due process, the Supreme Court affirmed the ruling of the Eleventh Circuit Court of Appeals that the defendant was entitled to relief. The state of Florida argued that employing silence to prove sanity was significantly different than employing it to prove factual commission of the charged offense, and therefore, the due process rationale of Doyle did not apply. The Supreme Court rejected this distinction, as follows:

> The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise

by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the State gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations. 474 U.S. at 292, 106 S.Ct. at 639.

Florida also argued that a suspect's comprehension of *Miranda* warnings, as evidenced by his silence, is far more probative of sanity than of commission of the underlying offense and, therefore, *Doyle's* concern with the "insolubly ambiguous" character of the post-*Miranda* warnings silence in that case was not present in the context of silence used to rebut an insanity defense. The Court declined to evaluate the probative value of the silence in *Wainwright v. Greenfield,* characterizing Doyle's discussion of the ambiguity of silence as "merely added weight to the Court's principal rationale, which rested on the implied assurance contained in the *Miranda* warning." *Wainwright,* 474 U.S. at 293–94, 106 S.Ct. at 639– 40. This is the first instance where the Court so narrowed *Doyle's* rationale.

I respectfully disagree with the Majority's conclusion that the objectionable nature of the penalty phase references to silence in this case—which were employed not to impeach a denial of criminal responsibility with insolubly ambiguous silence, but instead as a response to a defense assertion of the mental health mitigating circumstance in the penalty phase— was made plain by *Doyle* alone, and does not depend upon *Wainwright v. Greenfield's* extension of the *Doyle* rationale. I do not dispute that creative lawyers operating in the post-*Doyle,* pre-*Wainwright v. Greenfield* world could have seen the logic in the extension and advocated for such a holding, as Greenfield's lawyer did. But, the question before us is one of reasonable competence under the Sixth Amendment and the circumstances in *Wainwright v. Greenfield* were so obviously

distinct from Doyle that I do not believe that the U.S. Supreme Court would deem a lawyer to be incompetent for having failed to anticipate that decision.

It is significant in this regard that the U.S. Supreme Court still has not spoken on the issue of the retroactive application of the *Wainwright v. Greenfield* rule, much less the question of counsel ineffectiveness for failing to anticipate that extension or, as the Majority would have it, application of the rule. Notably, the single case that the Majority cites in arguing that *Doyle* commands its result, *Thomas v. State of Indiana*, 910 F.2d 1413 (7th Cir.1990), is distinguishable because it did not involve an ineffective assistance of counsel claim, but instead involved federal habeas corpus review of a state prisoner's preserved *Doyle/Wainwright* claim, which had been rejected in state court. The fact that one of the twelve Circuits believes that the rule in *Wainwright v. Greenfield* was not "new" for purposes of federal habeas retroactivity purposes does not mean that the Sixth Amendment automatically obliged counsel to predict that extension of the old rule—or, to predict the case that, in the view of the *Thomas* court, "made explicit what was ... implicit." *Thomas,* 910 F.2d at 1416. In conflating and confusing two distinct areas of law—comity-based limitations upon federal courts retroactively applying new constitutional rules to state trials upon habeas review versus substantive ineffective assistance of counsel standards under the Sixth Amendment—which are aimed at very different problems, the Majority goes astray. Though *Wainwright v. Greenfield* certainly derived from *Doyle,* it extended Doyle to a new and distinct scenario, and therefore, counsel here cannot be faulted, in hindsight, for failing to anticipate the extension. Thus, appellant's underlying claim respecting trial counsel fails as a matter of law.

I also respectfully disagree with the Majority's manner of assessing the prejudice allegedly resulting from counsel's failure to forward an objection based upon the then-non-existent decision in *Wainwright v. Greenfield.* In evaluating prejudice, the Majority does not cite to *Strickland/Pierce* cases, but instead, to cases assessing prejudice in a direct review para-

digm. *Doyle* and its progeny are, of course, federal constitutional restrictions upon state criminal trials; and defaulted *Doyle*-type claims collaterally raised under the guise of ineffective assistance of counsel are subject to the usual, heightened standard of *Strickland* prejudice. *See, e.g., Hook v. Iowa,* 307 F.3d 756, 758 (8th Cir.2002), *cert. denied,* 538 U.S. 929, 123 S.Ct. 1586, 155 L.Ed.2d 324 (2003) (finding no prejudice under *Strickland* in failing to forward *Doyle/Wainwright* objection); *Pitts v. Anderson,* 122 F.3d 275, 279–80 (5th Cir.1997) (assessing counsel's performance in failing to forward *Doyle* objection under *Strickland* test, for purposes of determining whether cause existed for state procedural default); *Stokes v. Procunier,* 744 F.2d 475, 483 (5th Cir.1984) (counsel unreasonably failed to object to *Doyle* violation, but no *Strickland* prejudice). The Majority errs in applying a diluted version of the prejudice test. See *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 524–25 (2001); *Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300, 1307–08 (1994).

I am aware that, in *Commonwealth v. Clark,* 533 Pa. 579, 626 A.2d 154 (1993)—a case involving a claim of ineffective assistance of counsel in failing to object to a classic Doyle violation involving impeachment of the accused with his post-arrest silence—this Court's summary analysis of the question of prejudice failed to perceive a distinction between the direct appeal harmless error standard and the prejudice required to prove ineffective assistance of counsel. *Id.* at 158. The vitality of Clark's approach to prejudice is obviously faulty given subsequent decisions by this Court such as *Howard* and *Williams,* which have recognized the crucial distinction in the tests. Moreover, it is notable that the Clark Court recognized that *Pierce,* 515 Pa. 153, 527 A.2d 973, provided the governing standard in this regard. 626 A.2d at 157. *Pierce,* of course, explicitly held that the Pennsylvania approach to claims of counsel ineffectiveness is the same as the *Strickland* test, including the test for prejudice. *See* 527 A.2d at 976–77 (construing tests as establishing "an identical rule of law in this Commonwealth"). To the extent Clark may be read as seeing no distinction in the tests, it is squarely at odds with

Pierce and, via Pierce, squarely at odds with governing precedent from the U.S. Supreme Court, which has held that prejudice will be presumed in conjunction with claims of ineffective assistance of counsel only in three narrow categories of cases, i.e., situations involving (1) an actual denial of counsel, (2) state interference with counsel's assistance, or (3) an actual conflict of interest burdening counsel. See *Bell v. Cone*, 535 U.S. 685, 695–96 n. 3, 122 S.Ct. 1843, 1850–51 n. 3, 152 L.Ed.2d 914 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 1240–41, 152 L.Ed.2d 291 (2002); *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). None of those situations is implicated here. Thus, appellant is required to prove actual Strickland prejudice, i.e., he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.[2]

Next, I note that, in passing upon appellant's claims of ineffective assistance of counsel, the Majority does not make it plain that it appreciates that federal claims are at issue and that it is federal law which governs those claims. Indeed, the Majority cites no federal cases in this regard. It may be that the Majority's omission derives from the very fact that this Court has explicitly recognized that the Pennsylvania constitutional test for counsel ineffectiveness is the same as the federal *Strickland* test-albeit we further refine the *Strickland* performance and prejudice approach into a three-part inquiry into arguable merit and absence of objective reasonable basis (performance component) and prejudice. *E.g. Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 855, n. 19 (2003); *Bond*,

---

2. In this regard, I note that the references to silence here were not used to suggest appellant's guilt, but rather, only to rebut appellant's evidence of a mental health mitigating circumstance. None of the questions that appellant refused to answer went to the facts of the crime; rather they went only to appellant's mental capacity. It is also notable that here, unlike in a case such as the *Thomas* case invoked by the Majority, the references were not to "pure silence," but rather to the fact that, for purposes of the penalty phase mental health defense, appellant was capable of rational reasoning by selectively choosing which questions to respond to and which ones not to respond to.

819 A.2d at 41–42; Pierce. Despite the clarity of these pronouncements, the failure of Pennsylvania courts to explicitly acknowledge the federal nature of such claims has led to avoidable complications when matters pass on to federal habeas corpus review. *See, e.g., Rompilla v. Horn*, 355 F.3d 233, 246–50 (3d Cir.2004); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir.2000), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001). In one instance, a Third Circuit panel inexplicably seized upon the failure of a Superior Court panel to include a citation to any federal case when applying the *Strickland/Pierce* test as a reason to ignore the Superior Court's analysis of the ineffectiveness claim and the deferential standard of review required by the Anti–Terrorism and Effective Death Penalty Act. *Everett v. Beard*, 290 F.3d 500 (3d Cir.2002), *cert. denied*, 537 U.S. 1107, 123 S.Ct. 877, 154 L.Ed.2d 777 (2003). As a matter of clarity and comity, and to facilitate appropriate federal habeas review should it occur, I would make it abundantly plain to our esteemed federal brethren, where the Majority does not, that this Court recognizes that appellant presents his claims of ineffective assistance of counsel under federal law and that the test for ineffective assistance of counsel stated and applied today is the same under the Pennsylvania Constitution as it is under the United States Constitution.

I think it is particularly important to make clear what law we are applying in analyzing appellant's *Strickland/Doyle/Wainwright v. Greenfield* issue. As appellant notes, Brief of Appellant, 67 n. 40, this Court has invoked the Pennsylvania Constitution to go farther than the U.S. Supreme Court in extending the temporal coverage of the Doyle proscription. *See, e.g., Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537, 539 (1982) (rejecting *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) under aegis of Pennsylvania Constitution and extending *Doyle* to post-arrest, pre-*Miranda* scenario). The present claim, however, sounds in ineffective assistance of counsel and it is settled that the test in that instance is coterminous. This Court should make that point explicitly.

Finally, I disagree with the Majority's decision to "hold in abeyance" appellant's remaining penalty phase issues pending remand. I do not agree with such a piecemeal approach, which could conceivably lead to unnecessary delay in the form of multiple reviews by this Court and multiple remands.

Justice EAKIN joins this concurring and dissenting opinion.