Chief Justice SAYLOR,
concurring.
Although I support the outcome and agree with much of the majority’s reasoning, I have a number of material differences. Accordingly, I concur in the result.
By way of a few examples of these differences, first, in applying the prejudice prong of the standard for determining deficient attorney stewardship, the majority phrases the relevant test in outcome-determinative terms, see Majority Opinion, at 237 n. 9, 129 A.3d at 1167 n. 9, whereas, the appropriate one is tethered to whether confidence in the verdict has been undermined. See, e.g., Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984) (explaining that a strict outcome determinative test imposes too heavy a burden).[1] Second, the majority approaches Appellant’s conflict-of-interest claim in a somewhat generic fashion, see Majority Opinion, at 239-40, 129 A.3d at 1168-69, when I believe that the conflict in issue is a particularly problematic species entailing multiple concurrent representation within the purview of the United States Supreme Court’s decision in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).[2] Notably, there is continued controversy over the appropriate development of the standards prescribed by Sullivan. See, e.g., West v. People, 341 P.3d 520, 531-32 (Colo. 2015) (discussing the approaches of various jurisdictions in determining the adverse effect of multiple concurrent representation on the defense). Third, the majority appears to revert to the practice of gleaning reasonable strategies on the *288 part of defense counsel, which the Court has otherwise eschewed. Compare Majority Opinion, at 256, 129 A.3d at 1178 (theorizing that “counsel could have wished to downplay” evidence of prior bad acts on Appellant’s part rather than seeking a limiting instruction), with Commonwealth v. Duffey, 579 Pa. 186, 205, 855 A.2d 764, 775 (2004) (“[T]his court should refrain from gleaning whether [a] reasonable basis exists.”); cf. Wiggins v. Smith, 539 U.S. 510, 526-27, 123 S.Ct. 2527, 2538, 156 L.Ed.2d 471 (2003) (admonishing that courts are to avoid “post hoc rationalization of counsel’s conduct”). As a final example, I would prefer not to frame the mitigation aspect of the penalty calculus in terms of “arous[ing] the jury’s sympathy,” Majority Opinion, at 282-83, 129 A.3d at 1194; rather, I believe that the relevant inquiry concerns the impact of mitigation upon the jurors’ assessment of the degree of a defendant’s moral culpability in the discrete selection determination between the penalties of life imprisonment and death.

. While I consider the majority's treatment, in this regard, to represent an abbreviated application of the appropriate standard encompassing a reasonable-probability assessment, it would be my preference to avoid shorthanding given the potential for misinterpretation.

. The conflict was particularly stark in this case, since the same public defenders’ office that represented Appellant also represented the individual, Catalino Morales, found in possession of the weapons linked by the prosecution to the killing for which Appellant was charged. Morales, thus, specifically was a potential suspect and a key figure in Appellant's prosecution.