J-A24043-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAMOND WALLS, | : | |
| | : | |
| Appellant | : | No. 612 WDA 2017 |

Appeal from the PCRA Order March 31, 2017
in the Court of Common Pleas of Allegheny County,
Criminal Division, No(s): CP-02-CR-0004343-2015

BEFORE: MOULTON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: FILED NOVEMBER 21, 2017

Damond Walls ("Walls") appeals from the Order dismissing, without a hearing, his Petition filed pursuant to the Post Conviction Relief Act ("PCRA"). See 42 Pa.C.S.A. §§ 9541-9546. We vacate the PCRA court's Order and remand for an evidentiary hearing.

On January 23, 2015, Pittsburgh Police Officer David Spinneweber ("Officer Spinneweber") was assigned to a roving DUI checkpoint. At approximately 11:09 p.m., Officer Spinneweber and his partner were dispatched to the intersection of Lorenz Avenue and Chartiers Avenue after receiving a call regarding a two-vehicle accident at that location.

Upon his arrival at the scene, Officer Spinneweber made contact with the driver of the Honda Odyssey involved in the accident, Scott Klaja ("Klaja"). Officer Spinneweber noted that Klaja seemed confused, and did not realize that he had been in an accident. Officer Spinneweber also

observed that Klaja's eyes were "pinpointed," and that he was staggering. Based on these observations, Officer Spinneweber asked Klaja to submit to field sobriety tests. Klaja failed all three tests.

Klaja admitted to Officer Spinneweber that he takes Xanax, and that he had taken muscle relaxers prior to the accident. Klaja was also adamant that he had just been robbed and beaten with a pipe earlier that night, and that his confusion was the result of injury to his head. Officer Spinneweber did not observe any outward signs of injury, but pulled back Klaja's hair "to oblige him," and noticed a contusion on the back of Klaja's head. Officer Spinneweber requested the assistance of paramedics at that time.

When the paramedics arrived, they observed that Klaja had pinpoint pupils, decreased respirations, and altered mental status. The paramedics recommended that Klaja be taken to the hospital, and Officer Spinneweber released him to the paramedics. During transport, Klaja exhibited a diminished level of responsiveness, and the paramedics administered Narcan, an opiate antidote, with a positive result.

The following day, Officer Spinneweber was assigned to desk duty at the Zone 6 station. At approximately 5:00 p.m., Klaja entered the station and filed a robbery and assault report with Officer Spinneweber. Klaja did not recognize Officer Spinneweber from the previous night. Klaja alleged that he was at his friend "Rush's" house when Walls, known to Klaja as "Wheezy," and two unidentified males entered the residence. Klaja alleged

that an argument ensued between Walls, Klaja, and one of the other males about money they believed Klaja owed them. According to Klaja, one of the unidentified males hit him repeatedly with a metal pipe, and Walls began to kick him when he fell to the ground. Klaja also alleged that Walls pulled him up by his hair, pointed a firearm at his face, and threatened to shoot him. Klaja alleged that one of the men removed cash from his wallet, and one of them said to get the tools from his truck.

After taking Klaja's report, Officer Spinneweber gave the report to plainclothes detectives. During their investigation, Detectives Dawn Mercurio ("Detective Mercurio"), Michael Mares, and Jeff Brock visited the residence of the man known as Rush, Yair Amram ("Amram"). Amram told the detectives that he was outside on the porch, and did not witness the assault.

Additionally, Klaja later returned to the police station to view a photo array, and identified Walls as the individual who had assaulted him.

Walls was charged with robbery, aggravated assault, terroristic threats, and criminal conspiracy. Following a jury trial, Walls was convicted of aggravated assault and conspiracy. The trial court sentenced Walls to an aggregate term of 5 to 10 years in prison.

Walls filed a post-sentence Motion on December 23, 2015, and a supplemental post-sentence Motion on March 10, 2016. The trial court denied Walls's Motions on March 18, 2016.[1]

Walls filed the instant Petition on July 6, 2016. On February 10, 2017, the PCRA court issued a Notice of its intention to dismiss Walls's Petition without a hearing, pursuant to Pa.R.Crim.P. 907. Walls filed a Response, requesting that the PCRA court grant him a new trial, or conduct a hearing on his ineffectiveness claims. On March 31, 2017, the PCRA court dismissed Walls's Petition without a hearing. Walls filed a timely Notice of Appeal.[2]

On appeal, Walls raises the following issue for our review:

At trial, the key issue was alleged victim [] Klaja's credibility. [] Walls's counsel failed to impeach Klaja's credibility with several critical pieces of evidence, including: (1) a single one of Klaja's seventeen crimen falsi convictions, (2) Klaja's inconsistent statements at the preliminary hearing, and (3) witness testimony to show that independent medical records contradicted Klaja's trial testimony. Is [] Walls entitled to PCRA relief because he was prejudiced by counsel's ineffective assistance?

Brief for Appellant at 2 (sub-issues renumbered).

Our standard of review of a PCRA court's [dismissal] of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is

---

[1] Walls subsequently filed a Notice of Appeal from his judgment of sentence, but discontinued his direct appeal on July 1, 2016.

[2] The PCRA court did not direct Walls to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. The PCRA court relied on the reasoning set forth in its Rule 907 Notice to explain the dismissal of the Petition.

free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

Commonwealth v. Franklin, 990 A.2d 795, 797 (Pa. Super. 2010) (citation omitted).

There is no absolute right to an evidentiary hearing, and a PCRA court has discretion to deny a petition without a hearing "if the PCRA court determines that the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence." Commonwealth v. Hart, 911 A.2d 939, 941 (Pa. Super. 2006). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." Commonwealth v. Hanible, 30 A.3d 426, 438 (Pa. 2011) (citation and brackets omitted). Thus, when the PCRA court denies a petition without an evidentiary hearing, we "examine each issue raised in the PCRA petition in light of the certified record before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." Commonwealth v. Khalifah, 852 A.2d 1238, 1240 (Pa. Super. 2004).

The PCRA permits relief when a conviction is the result of "[i]neffective assistance of counsel which, in the circumstances of the particular case, so

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

> It is well-settled that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

Franklin, 990 A.2d at 797 (citations omitted); see also Commonwealth v. Charleston, 94 A.3d 1012, 1019 (Pa. Super. 2014) (stating that "[a] defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such a magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." (citations and some brackets omitted)).

> [W]hen an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the [PCRA] court to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing.

Commonwealth v. Walls, 993 A.2d 289, 296-97 (Pa. Super. 2010) (citation and some brackets omitted). However, "if the record reflects that the underlying issue is of no arguable merit or no prejudice resulted, no evidentiary hearing is required." Commonwealth v. Baumhammers, 92 A.3d 708, 726-27 (Pa. 2014); see also id. at 726 (stating that "[t]he

controlling fact ... is the status of the substantive assertions in the petition.").

Walls's claim includes three arguments regarding the effectiveness of his trial counsel, which we will address separately. Each of Walls's arguments relates to the credibility of Klaja's trial testimony. As an initial matter, Walls asserts that Klaja's credibility was crucial because Klaja was the Commonwealth's key witness at trial. Brief for Appellant at 28-29. Walls directs our attention to the testimony of Amram, the eyewitness who testified at trial, which, according to Walls, contradicts Klaja's account of the events in the following ways: (1) Klaja identified Walls as one of his assailants, but Amram stated that Walls was not involved, and was not inside the house when the assault occurred; and (2) Klaja denied using drugs prior to the car accident, but Amram testified that Klaja was high on heroin. Id. at 29, 45-46.

In his first argument, Walls contends that trial counsel was ineffective for failing to impeach Klaja with his 17 prior crimen falsi convictions,[3]

---

[3] The Commonwealth concedes that Klaja's 2008 theft conviction would be admissible as impeachment evidence. Commonwealth's Brief at 17. However, the Commonwealth asserts that a majority of Klaja's prior convictions "could only have been used as general impeachment due to their staleness," and that Walls failed to establish that the probative value of these convictions substantially outweighs their prejudicial effect. Id.

pursuant to Pa.R.E. 609.[4] Brief for Appellant at 32-33, 36-37. Walls argues that six of Klaja's convictions occurred within the past 10 years, and are therefore per se admissible under Pa.R.E. 609(a). Brief for Appellant at 33. Additionally, Walls argues that Klaja's remaining convictions are nonetheless admissible under Pa.R.E. 609(b). Brief for Appellant at 33. Walls argues that trial counsel was aware of Klaja's crimen falsi convictions because the public defender appointed to represent Walls prior to trial counsel's entry of appearance had given trial counsel certified copies of the convictions. Id. at 17. Walls again points to contradictions between Klaja's testimony and Amram's testimony, and suggests that the jury was not able to appropriately

---

[4] Pennsylvania Rule of Evidence 609 provides, in relevant part, as follows:

Rule 609. Impeachment by Evidence of a Criminal Conviction

> (a) In General. For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime … must be admitted if it involved dishonestly or false statement.

> (b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

> > (1) its probative value substantially outweighs its prejudicial effect; and

> > (2) the proponent gives an adversary party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a), (b).

draw inferences relating to Klaja's reliability as a result of trial counsel's failure to impeach Klaja with his prior crimen falsi convictions. Id. at 44-48. Walls claims that "there can be no strategic or tactical explanation for failing to impeach the Commonwealth's key witness[.]" Id. at 40.

"Evidence of a witness's conviction for a crime involving dishonesty or a false statement is generally admissible. Pa.R.E. 609(a). 'A failure to so impeach a key witness is considered ineffectiveness in the absence of a reasonable strategic basis for not impeaching.'" Commonwealth v. Treiber, 121 A.3d 435, 456 (Pa. 2015) (citing Commonwealth v. Small, 980 A.2d 546, 565 (Pa. 2009)).

Upon review, we conclude that Walls has set forth a claim of arguable merit based on trial counsel's failure to impeach Klaja with his prior crimen falsi convictions. See Treiber, 121 A.3d at 456. Klaja and Amram were the only witnesses to testify at trial who were at Amram's residence on the date of the incident. However, Amram testified that he did not witness the assault, and that Walls was not the assailant. See N.T., 9/21/15, at 80 (wherein Amram testified that "[Walls] didn't assault him. It was somebody else."); 81, 86 (wherein Amram stated that he and Walls were outside the house when the assault occurred); see also id. at 113, 119 (wherein Detective Mercurio testified that when he interviewed Amram during the investigation, Amram told him that he was outside on the porch when the assault took place). Klaja was the Commonwealth's key witness at trial, as

he was the only witness who specifically identified Walls as the assailant. Thus, trial counsel's failure to impeach Klaja could have reasonably had an adverse effect on the outcome of the proceedings. See Commonwealth v. Baxter, 640 A.2d 1271, 1274 (Pa. 1994) (concluding that trial counsel was ineffective for failing to investigate and introduce evidence regarding the incarceration of the Commonwealth's primary witness, where the Commonwealth provided counsel with information about that witness's criminal record, and where that witness was the only individual "to provide a solid link between [a]ppellant and the crimes charged. Thus, casting doubt on [the witness's] credibility was essential to [a]ppellant's defense."); see also Commonwealth v. Copeland, 723 A.2d 1049, 1051 (Pa. Super. 1998) (stating that "[a] witness's criminal record long has been considered a necessary and valuable tool for the defense."); Charleston, supra. Additionally, because the PCRA court declined to conduct a hearing during which trial counsel could testify as to his reasons for failing to offer such impeachment evidence, we are unable to discern, based on the record, whether there was a reasonable basis for counsel's actions in this regard. See Commonwealth v. Duffey, 855 A.2d 764, 775 (Pa. 2004) (stating that "this [C]ourt should refrain from gleaning whether [] a reasonable basis exists."); see also Commonwealth v. Perry, 959 A.2d 932, 937 (Pa. Super. 2008) (stating that "[o]ur Supreme Court has cautioned against

speculating about the reasons for counsel's actions in the absence of an evidentiary hearing, except in the clearest of cases." (citation omitted)).

In his second argument, Walls argues that trial counsel was ineffective for failing to impeach Klaja with prior inconsistent statements he made at the preliminary hearing. Brief for Appellant at 33, 39. As an example, Walls points to Klaja's testimony, during the preliminary hearing, that Amram was driving the Honda Odyssey at the time of the crash; however, at trial, Klaja acknowledged that he had been driving. Id. at 39-40. Walls claims that Klaja's prior inconsistent statements, if they had been admitted, "would have further undermined Klaja's credibility," and "likely would have impacted the jury's decision of whether it could, in good faith, reach a guilty verdict that rested primarily on the foundation of Klaja's testimony." Id. at 50. Additionally, Walls asserts that trial counsel's failure to impeach Klaja with his prior inconsistent statements "cannot conceivably have been done to advance [] Walls's interests." Id. at 40.

Pennsylvania Rule of Evidence 613 provides that "[a] witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility." Pa.R.E. 613; see also Commonwealth v. Henkel, 938 A.2d 433, 442 (Pa. Super. 2007) (stating that "a prior inconsistent statement of a declarant is admissible to impeach the declarant."). Generally, trial tactics pertaining to cross-examination of witnesses are matters of strategy, and are within the province of trial

counsel. See Commonwealth v. Smith, 17 A.3d 873, 912 (Pa. 2011); see also Commonwealth v. Harrison, 663 A.2d 238, 241 (Pa. Super. 1995) (stating that "so long as counsel's tactical decisions may be objectively viewed as having a reasonable basis designed to effectuate the client's interests, his stewardship cannot be deemed ineffective and the defendant cannot be said to have been denied a fair trial." (citation and brackets omitted)).

Upon review, we conclude that there is at least arguable merit in Walls's second contention, as Klaja was the Commonwealth's key witness at trial, and counsel's failure to impeach Klaja's credibility could have reasonably had an adverse effect on the outcome of the proceedings. See generally Baxter, 640 A.2d at 1274; see also Charleston, supra. Additionally, in the absence of an evidentiary hearing on the matter, we are unable to determine whether trial counsel's failure to present such impeachment evidence was related to his trial strategy. See Duffey, supra; see also Perry, supra.

Finally, Walls asserts that his trial counsel was ineffective for failing to call as a witness a medical professional to explain that the medical records prepared by the paramedics and emergency room doctors contradicted Klaja's testimony. Brief for Appellant at 33. Walls identifies Mark Scheatzle, M.D. ("Dr. Scheatzle"), the treating emergency room physician, and paramedics Mark Demko ("Demko") and Jonathan Dalbey ("Dalbey"), as

potential witnesses. Id. at 38. Walls claims that the public defender appointed to represent Walls prior to trial counsel's entry of appearance provided trial counsel a copy of the subpoena that had been served on Dr. Schaetzle. Id. Additionally, during opening statements, trial counsel indicated that the paramedics would testify. Id. Walls acknowledges that the paramedics' and emergency room records were admitted into evidence at trial, but argues that "[t]hese technical medical records are difficult-to-impossible for a layperson to understand." Id. at 24. Walls asserts that testimony by a medical professional would establish that the medical records contradict Klaja's trial testimony that he did not use heroin on the night of the accident; he suffered serious head injuries and was diagnosed with a severe concussion; and he left the hospital early, against medical advice. Id. at 25-26, 29-30, 38-39. Walls also argues that trial counsel lacked a reasonable basis for failing to introduce testimony from a medical professional to explain these contradictions. Id. at 40. Additionally, Walls claims that medical testimony that Klaja had overdosed on an opioid such as heroin would have contradicted Klaja's assertions that his erratic driving was the result of a head injury, and would have strengthened the defense theory that Klaja had a motive to lie. Id. at 30. Walls asserts that testimony by a medical professional would have been beneficial to his defense because such testimony would have undermined Klaja's credibility, and there is a reasonable probability that the jury would have acquitted Walls had it found

Klaja's testimony less credible. Id. at 49; see also id. (wherein Walls argues that "[t]rial [c]ounsel himself evidently understood this, as he promised the jury in his opening statement that they would hear from one of the paramedics").

When raising an ineffectiveness claim based on counsel's failure to call a potential witness, a PCRA petitioner must demonstrate that

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Washington, 927 A.2d 586, 599 (Pa. 2007). In order to demonstrate prejudice in a failure to call a witness claim, "the PCRA petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Commonwealth v. Johnson, 966 A.2d 523, 536 (Pa. 2009) (citation omitted); see also Commonwealth v. Chmiel, 889 A.2d 501, 546 (Pa. 2005) (stating that "[t]rial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness'[s] testimony would have been beneficial or helpful in establishing the asserted defense."). "A failure to call a witness is not per se ineffective assistance of counsel[,] for such decision usually involves matters of trial strategy." Commonwealth v. Michaud, 70 A.3d 862, 868 (Pa. Super. 2013).

Upon review, we conclude that Walls, having asserted all of the elements of his claim as identified in Washington, supra, has raised a genuine issue of fact regarding trial counsel's failure to introduce testimony to explain Klaja's medical records, particularly in light of trial counsel's indication during his opening statement that he would do so. Additionally, Walls attached to his Petition witness certifications for Dr. Schaetzle, Demko and Dalbey, indicating that each witness could testify as to their observations and evaluations of Klaja's condition. See 42 Pa.C.S.A. § 9545(d)(1) (providing that [w]here a petitioner requests an evidentiary hearing, the petition shall include a signed certification stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony.").[5] Although the relevant medical records were admitted into evidence as exhibits, Walls, in arguing that the records are difficult for a layperson to understand without explanation, has set forth a conceivable claim of prejudice, i.e., that counsel's failure to impeach the Commonwealth's key witness by highlighting

---

[5] We observe that Walls's certifications do not identify the proposed witnesses' addresses or dates of birth. However, the PCRA court did not mention this defect in either its 907 Notice or its Order dismissing Walls's Petition without a hearing. See Commonwealth v. Pander, 100 A.3d 626, 642 (Pa. Super. 2014) (stating that "it is improper to affirm a PCRA court's decision on the sole basis of inadequate witness certifications where the PCRA court did not provide notice of the alleged defect."); see also Commonwealth v. Lippert, 85 A.3d 1095, 1101 (Pa. Super. 2014) (remanding to PCRA court for an evidentiary hearing despite deficient witness certifications, where the PCRA court failed to notify appellant of the defects, and appellant raised an ineffectiveness claim of arguable merit).

the contradictions between Klaja's testimony and the medical records could have reasonably had an adverse impact on the outcome of the proceedings. See Charleston, supra. Further, because the PCRA court declined to hold an evidentiary hearing on this matter, we are unable to determine whether trial counsel's failure to call such witnesses was the result of a reasonable strategy. See Duffey, supra; see also Perry, supra.

Because each of Walls's assertions, at a minimum, raises a genuine issue of material fact which cannot be resolved on the existing record, we conclude that the PCRA court improperly dismissed Walls's Petition without an evidentiary hearing, during which trial counsel could testify as to his trial strategy. See Hanible, supra. Accordingly, we remand to the PCRA court to conduct an evidentiary hearing to consider the ineffectiveness claims addressed herein. See Walls, 993 A.2d at 296-97; see also id. at 299 (remanding for evidentiary hearing where appellant's ineffectiveness claim, "[a]t a minimum, ... raise[d] genuine issues of material fact which [could not] be resolved on the existing record.").

Order vacated. Case remanded for evidentiary hearing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/21/2017