J-S12009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BREON DAVONNE JUDON | : | |
| | : | |
| Appellant | : | No. 1268 MDA 2022 |

Appeal from the PCRA Order Entered August 16, 2022,
in the Court of Common Pleas of Luzerne County,
Criminal Division at No(s): CP-40-CR-0003670-2012.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: JUNE 20, 2023**

Breon Davonne Judon appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A §§ 9541-46. We affirm.

The pertinent facts have been summarized as follows:

The evidence adduced at trial demonstrates that on August 3-4, 2012, Judon and a co-conspirator, Mitchell Dedes, robbed Aaron Reznick of his i-Phone and vehicle at gunpoint in Hazelton, Pennsylvania, ordered him to remove his clothes, and forced him into the trunk of his car. Reznick escaped from the trunk. Judon and Dedes assaulted Reznick and inflicted severe injuries to his brain, leaving him semi-comatose. Police officers transported Reznick to the hospital, but he died on August 13, 2012. Dedes ultimately pled guilty to third degree murder.

Multiple witnesses testified that Judon admitted participating in Reznick's robbery, kidnapping and/or beating.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Shawn Jackson testified that within several days after the incident, Judon admitted beating and robbing Reznick. N.T. 608-610. Tanya Stimpson testified that after Reznick was found, Judon and Dedes told her that they "did something bad and that they had to get out of town quickly." N.T. 551. Judon and Dedes explained to Stimpson that

> they had beat a man up, that they had put him in the trunk of a car, they had made him take his clothes off, that somehow he had gotten out of the trunk, and that they had beat him some more, and that – something about they had stomped on the head. And one of them – I don't know which, but they said that he was out cold.

N.T. 549-552. Lastly, Shaun Butler, Judon's cellmate in jail, testified that Judon told him that he had robbed and kidnapped Reznick. N.T. 766-768.

*Commonwealth v. Judon*, 116 A.3d 704 (Pa. Super. 2014) (non-precedential decision) at 2-3.

On October 3, 2013, a jury found Judon guilty of second-degree murder, kidnapping, robbery and three counts of criminal conspiracy. Thereafter, the trial court sentenced him to an aggregate term of life imprisonment. Judon appealed. On December 24, 2014, we affirmed his judgment of sentence. *Judon*, *supra*. Our Supreme Court denied Judon's petition for allowance of appeal on June 25, 2015. *Commonwealth v. Judon*, 117 A.3d 1280 (Pa. 2015).

On November 6, 2015, Judon filed a *pro se* PCRA petition. The PCRA court appointed counsel and on December 16, 2016, that attorney filed a motion to withdraw from the case. On February 17, 2017, the PCRA court granted counsel's motion to withdraw. The PCRA court appointed new

counsel, and, on November 3, 2017, an evidentiary hearing was held on a single claim, and the court took the matter under advisement.

On June 4, 2020, Judon, though current counsel, petitioned the PCRA court to amend the PCRA petition. The PCRA court granted the petition. On November 17, 2020, Judon filed an amended PCRA petition. PCRA hearings were held on March 12, 2021, and July 6, 2021. On November 28, 2021, Judon filed a post-hearing brief and a supplement to the amended petition. Thereafter, the Commonwealth filed a responsive brief, and Judon filed a reply brief. By order entered August 16, 2022, the PCRA court denied Judon's amended petition. This appeal followed. Both Judon and the PCRA court have complied with Pa.R.A.P. 1925.

Judon raises the following two issues, and seven sub-issues on appeal:

> Did the [PCRA] court err and abuse its discretion in ruling that the Commonwealth did not violate Judon's due process rights under the Fourteenth Amendment and Article I, Section 9 of the Pennsylvania Constitution, by failing to disclose the consideration offered to cooperating witness Shaun Butler, and then having Butler deny such consideration during his testimony?

> Did the [PCRA] court err and abuse its discretion in ruling that trial counsel was not ineffective, notwithstanding counsel's multiple errors, considered separately and collectively, which included:

> - failing to investigate and call Christopher Hempel, to whom [Dedes] confessed his guilt in an account that largely exculpated Judon;

> - failing to recognize that [trial counsel's] concurrent representation of Hempel and Judon presented a conflict of interest;

- 3 -

- inviting the jury to find Judon guilty of a lesser offense for violating a duty of care on which the jury received no instruction;

- failing to object to a felony murder instruction that left to the jury the task of deciphering the meanings of "partner" and "accomplice," terms critically important to the defense;

- opening the door for the prosecutor's otherwise improper propensity argument by "underhandedly" and improperly trying to argue character evidence in closing argument;

- failing to introduce available character evidence[;]

- failing to properly object to a torrent of improper propensity evidence (this question, in part, includes whether appellate counsel was ineffective as well)[.]

Judon's Brief at 4-5 (footnote omitted).

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

In his first issue, Judon claims the Commonwealth committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois*, 360 US. 264 (1959), by suppressing the consideration offered to Shaun Butler. According to Judon, the Commonwealth violated *Brady* by failing to disclose a detective's promise to make a recommendation at Butler's sentencing, and subsequently violated *Napue*, by eliciting at trial Butler's allegedly fraudulent testimony that no such consideration was promised.

Favorable evidence is material under **Brady**, and constitutional error results from suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. **Commonwealth v. Ovalles**, 144 A.3d 957 (Pa. Super. 2016). To establish a **Brady** violation, defendant must demonstrate: 1) the prosecution concealed evidence; 2) the evidence was either exculpatory or impeachment evidence favorable to him; and 3) he was prejudiced. **Commonwealth v. Packer**, 146 A.3d 1282 (Pa. Super. 2016).

In each of his remaining claims, Judon challenges the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. **Id.** at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Here, the PCRA court has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a). The Honorable Richard M. Hughes, III, has correctly rejected Judon's due process claim and addressed each of Judon's ineffectiveness claims with proper citation to legal authorities and citation to the certified record.

We discern no legal errors in Judge Hughes' analysis, and we find his factual findings and credibility determinations fully supported by our review of the record. As such, we adopt Judge Hughes' 1925(a) opinion as our own in affirming the order denying Judon post-conviction relief. *See* PCRA Court's Opinion, 8/15/22, at 4-6 (finding, as a matter of credibility that the police detective never made a deal with Butler in exchange for his testimony because he did not have authority to do so, and the district attorney's office never permitted him to); at 6-10 (concluding that trial counsel was not ineffective for failing to investigate and/or call Hempel as a witness; Judon presented no evidence that Hempel was available and willing to testify for the defense at the time of trial, Hempel's letters produced at the PCRA hearing lacked sufficient indicia of reliability, and Judon did not suffer actual prejudice, "as establishing which of the two accomplices beat and murdered [Reznick] would not have changed the outcome of the case, given the nature of accomplice

liability"); at 10-12 (finding that trial counsel did not have an actual conflict of interest and Judon did not suffer prejudice by counsel's failure to call Hempel as a witness); at 18-20 (explaining that Judon misconstrues trial counsel's closing argument; counsel did not suggest Judon was guilty of a lesser offense); at 20-22 (rejecting Judon's jury instruction claim regarding accomplice liability and felony murder); at 22-23 (explaining that the trial court properly instructed the jury that counsel's closings are not evidence; "the comments by [trial counsel] and response by the [prosecutor] did not have any adverse effect on the outcome of the proceedings when compared to the overwhelming amount of credible evidence against" Judon); at 24-26 (concluding Judon did not meet his burden of establishing trial counsel's ineffectiveness for failing to call character witnesses); at 26-30 (both trial and appellate counsel were not ineffective for failing to object/preserve claim regarding Commonwealth's use of drug and gun evidence); and at 30-31 (finding Judon's claim of cumulative prejudice due to trial counsel's ineffectiveness meritless).[1]

Order affirmed.

---

[1] The parties are directed to attach Judge Hughes' August 15, 2022, opinion to this memorandum in any future appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/20/2023</u>

**IN THE COURT OF COMMON PLEAS**
**OF LUZERNE COUNTY**

COMMONWEALTH OF PENNSYLVANIA : CRIMINAL DIVISION
:
v. :
:
BREON JUDON : NO: 3670 OF 2012

CLERK OF COURTS CRIMINAL
LUZ CNTY AUG15'22PM3:4

## MEMORANDUM

### INTRODUCTION

This memorandum addresses the issue raised on behalf of Defendant, Breon Judon, at the Post Conviction Collateral Relief (hereinafter "PCRA") hearings on March 12, 2021 and July 6, 2021. At the hearings, Defendant pursued multiple layered ineffectiveness claims.

### PROCEDURAL HISTORY

On October 7, 2013, Defendant was convicted by a jury of count 1 – criminal homicide - second degree murder, count 2 - criminal conspiracy to commit criminal homicide, count 3 - kidnapping to facilitate a felony, count 4 - criminal conspiracy to commit kidnapping to facilitate a felony, count 5 – robbery – inflict serious bodily injury, and count 6 - criminal conspiracy to commit robbery – infliction serious bodily injury. On December 9, 2013, Defendant was sentenced to a mandatory term of life imprisonment without the possibility of parole on the count 1 – second degree murder conviction. On count 2, Defendant received twenty to forty years, to be served concurrent to count 1. Count 3 merged with count 1 for sentencing purposes. On count 4, Defendant received two to four years, to run consecutively to the sentence imposed in counts 1, 2, and 3. Count 5 merged with count 1 for sentencing purposes. On Count 6, Defendant received four to eight years, to run consecutive to the sentence imposed in counts 1, 2,

1



3, 4, and 5. Thus, Defendant received a sentence of life imprisonment, plus a consecutive term of 6-12 years' imprisonment.

On December 24, 2014, the Superior Court of Pennsylvania affirmed Defendant's conviction. On July 27, 2015, the Supreme Court of Pennsylvania denied Defendant's Petition for Allowance of Appeal. On November 6, 2015, Defendant filed a PCRA Petition. On December 16, 2016, appointed counsel filed a motion to withdraw from the case and a motion to withdraw the PCRA Petition. On February 17, 2017, the Court granted counsel's motion to withdraw. New counsel was appointed, and on November 3, 2017, a hearing was held on a single claim, at which time the Court took the matter under advisement. On June 4, 2020, Defendant, through new counsel, petitioned the court to amend the PCRA Petition, which this Court granted. On November 17, 2020, Defendant filed an amended PCRA Petition. PCRA hearings were held on March 12, 2021 and July 6, 2021. On November 28, 2021, Defendant filed a Post Hearing Brief and Supplement/Amendment to the Amended Petition. On March 17, 2022, the Commonwealth filed a Brief in Response to Defendant's PCRA Petition. On May 8, 2022, Defendant filed a Corrected Post-Hearing Reply Brief. As previously indicated, at the PCRA hearings held on March 12, 2021 and July 6, 2021, Defendant pursued multiple layered ineffectiveness claims.

**LEGAL ANALYSIS**

Defendant's PCRA Petition raises no issues of merit and must be denied. To be eligible for relief under 42 Pa.C.S.A. § 9543(a)(2) of the Post Conviction Relief Act, a defendant must plead and prove by a preponderance of the evidence that "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process

2

that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v.

Hickman, 799 A.2d 136, 140 n.2 (Pa. Super. 2002) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)).

There is a presumption that counsel is effective. Commonwealth v. Cross, 634 A.2d 173, 175

(Pa. 1993) (citing Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987)). Defendant bears the

burden of proving counsel's ineffectiveness and that burden does not shift. Cross, 634 A.2d at

175 (citing Commonwealth v. Jones, 471 A.2d 879 (Pa. 1984)).

For a defendant to prevail on an ineffectiveness claim, he must satisfy a three-prong test

and demonstrate that:

> (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis
> for his action or inaction; and (3) the petitioner suffered actual prejudice as a
> result. If a petitioner fails to prove any of these prongs, his claim fails. Generally,
> counsel's assistance is deemed constitutionally effective if he chose a particular
> course of conduct that had some reasonable basis designed to effectuate his
> client's interests. Where matters of strategy and tactics are concerned, a finding
> that a chosen strategy lacked a reasonable basis is not warranted unless it can be
> concluded that an alternative not chosen offered a potential for success
> substantially greater than the course actually pursued. To demonstrate prejudice,
> the petitioner must show that there is a reasonable probability that, but for
> counsel's unprofessional errors, the result of the proceedings would have been
> different. A reasonable probability is a probability that is sufficient to undermine
> confidence in the outcome of the proceeding.

> \*　　\*　　\*

> [A] defendant [raising a claim of ineffective assistance of counsel] is required to
> show actual prejudice; that is, that counsel's ineffectiveness was of such
> magnitude that it "could have reasonably had an adverse effect on the outcome of
> the proceedings."

Commonwealth v. Charleston, 94 A.3d 1012, 1018–19 (Pa. Super. 2012) (citations omitted and

alterations in original), *appeal denied*, 104 A.3d 523 (Pa. 2014). Where matters of strategy and

tactics are concerned:

> [C]ounsel's assistance is deemed constitutionally effective if he chose a particular
> course that had some reasonable basis designed to effectuate his clients' interest.
> Nor can a claim of ineffective assistance generally succeed through comparing, by

3

hindsight, the trial strategy employed with alternatives not pursued. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

Commonwealth v. Miller, 819 A.2d 504, 517 (Pa. 2002). Trial counsel is accorded broad discretion to determine tactics and strategy. Commonwealth v. Thomas, 744 A.2d 713, 717 (Pa. 2000).

## I. The Commonwealth Did Not Violate Defendant's Right to Due Process Under the Fourteenth Amendment

Defendant's claim that the Commonwealth violated due process pursuant to Brady and Napue is without merit. The Supreme Court of Pennsylvania summarized the relevant legal principles that govern a prosecutor's obligation to avoid suppression of exculpatory evidence consistent with the Due Process Clause of the U.S. Constitution, as interpreted in Brady v. Maryland, 373 U.S. 83 (1963). The Supreme Court of Pennsylvania explained:

> In Brady, the [Supreme Court of the United States] held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. This Court has held that to prove a Brady violation, the defendant has the burden of demonstrating that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant. Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence. Further, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Commonwealth v. Koehler, 36 A.3d 121, 133 (Pa. 2012) (internal quotations and citations omitted). The prosecution may not knowingly use false evidence, including false testimony, against a defendant. Napue v. Illinois, 360 U.S. 264, 269, (1959) (the Supreme Court held that

4

the prosecution violated due process when it failed to correct testimony it knew to be false); see also Giglio v. United States, 405 U.S. 150, 154 (1972).

In the context of a PCRA, "the prejudice inquiry requires a showing that the evidence in question was material to guilt or punishment, and that there is a reasonable probability that the result of the proceeding would have been different but for the alleged suppression of the evidence." Commonwealth v. Dennis, 950 A.2d 945, 966 (Pa. 2008). In determining if a reasonable probability of a different outcomes has been demonstrated, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Commonwealth v. Weiss, 986 A.2d 808, 815 (Pa. 2009) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995). Additionally, the petitioner must establish when and how he discovered the Brady material allegedly withheld by the prosecution; and explain why the information, with the exercise of due diligence, could not have been obtained earlier. Commonwealth v. Abu-Jamal, 941 A.2d 1263, 1268 (Pa. 2008).

Here, there is no evidence that the government suppressed any evidence from the Defendant. At trial, Shawn Butler (hereinafter "Mr. Butler") stated that he did not receive any benefit from testifying in the case. (Notes of Testimony, In re: Trial Transcript, September 30, 2013 through October 7, 2013, (Hughes, J.) (hereinafter "T.T.__") at 767, 783). Mr. Butler then recanted his testimony at the PCRA hearing. (Notes of Testimony, In re: PCRA Hearing, March 12, 2021, (Hughes, J.) (hereinafter "N.T.1. __") at 10-12). Detective Lieutenant Larry Fabian (hereinafter "Detective Fabian"), who has twenty-four years of experience as a detective, testified at the PCRA hearing that he did not aid Mr. Butler in any criminal case. (Notes of Testimony, In re: PCRA Hearing, July 6, 2021, (Hughes, J.) (hereinafter "N.T.2. __") at 40). If a

5

witness ever asked for something in exchange for testimony, Detective Fabian testified that he would "immediately close the notebook; and [] say, we're done," because he does not have the authority to make such deals. (N.T.2. 46-47). Detective Fabian would only testify at a sentencing hearing for a defendant if "ordered by the DA to do so." (N.T.2. 49). Detective Fabian reiterated multiple times that in his twenty-four years as a detective, he never gave assurances for cooperation to anybody, including Mr. Butler, because "I'm not stupid… I know what the rules are; and I know what the regulations are. And when I started in 1997, that was one of them. You don't make any kind of a deal, and you don't promise anything." (N.T.2. 51).

This Court ultimately found the testimony presented by Detective Fabian at the PCRA Hearing to be credible and did not find Mr. Butler credible. See Commonwealth v. Todd, 820 A.2d 707, 712 (Pa. Super. 2003) ("[W]e must defer to the credibility determinations made by the trial court that observed a witness's demeanor first hand."). Detective Fabian never made a deal with Mr. Butler in exchange for testimony in this case, as he did not have the authority to make a deal, and the DA never ordered him to do so. Therefore, Defendant's claim is without merit.

## II. Trial Counsel Was Not Ineffective Under the Sixth and Fourteenth Amendments, and Article I, Section 9 of the Pennsylvania Constitution

### a. Ineffectiveness for Failing to Call Christopher Hempel

Defendant's claim that Trial Counsel was ineffective for failing to call Christopher Hempel (hereinafter "Mr. Hempel") in order to admit alleged statements of co-Defendant Mitchell Dedes (hereinafter "Mr. Dedes") is without merit. While Mr. Hempel and Mr. Dedes were cellmates in prison, Mr. Dedes allegedly made statements that implicated him in the murder of the Victim, which Mr. Hempel claimed to have written down (hereinafter "Hempel letters"). Prior to trial, Mr. Hempel sent the Hempel letters to the Commonwealth and included a request

6

for consideration in his own criminal matters in exchange for testimony against Mr. Dedes. Mr. Hempel further stated that if the Commonwealth did not provide consideration, he would commit perjury. The Hempel letters were admitted into the record at the PCRA hearing. (N.T.1. 78, Def. Exh. 12).

If a failure to call a potential witness claim is raised, a PCRA petitioner satisfies the performance and prejudice requirements of Strickland v. Washington, 466 U.S. 668 (1984), by establishing the following:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Washington, 927 A.2d 586, 599 (Pa. 2007). "A witness's invocation of his Fifth Amendment rights renders him unavailable." Commonwealth v. Fiore, 780 A.2d 704, 711-12 (Pa. Super. 2001) (citing Commonwealth v. Franklin, 580 A.2d 25, 29 (Pa. Super. 1990)). "Counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would be helpful to the defense." Commonwealth v. Sneed, 45 A.3d 1096, 1109 (Pa. 2012). Failing to call a witness does not amount to per se ineffectiveness of counsel since such a decision is normally made as part of trial strategy. Id. To demonstrate prejudice as required by Strickland, Defendant would have to show how the testimony of the uncalled witness would have been helpful to his defense. Id.

Here, regarding the first and third prongs, Mr. Hempel existed at the time of the trial and Trial Counsel knew of Mr. Hempel. (N.T.1. 69-70). Regarding the second and fourth prongs, there was no evidence presented at the PCRA hearing that Mr. Hempel was available and willing to testify for the defense at the time of trial. For the fifth prong, the absence of Mr. Hempel's testimony was not so prejudicial as to have denied Defendant a fair trial. The Defendant claims

7

that the Hempel letters would have been admissible under Pa.R.E. 804(b)(3) – Declarations

Against Penal Interest. Pa.R.E. 804 states:

> (a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:
>
>> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
>
>          *        *        *
>
> (b) The Exceptions. The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
>> (3) Statement Against Interest. A statement that:
>>
>>> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>>>
>>> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Pa.R.E. 804. Reliability is determined by referring to the circumstances in which the declarant

gave the statement, not by reference to other corroborating evidence presented at trial.

Commonwealth v. Robins, 812 A.2d 514, 525 (Pa. 2002). The courts have used a totality of the

circumstances approach when determining the reliability of inculpatory or exculpatory

statements. Id. at 270. When examining the totality of the circumstances, the courts might

consider the following factors:

> the circumstances under which the statements were uttered, including the custodial/non-custodial aspect of the setting and the identity of the listener; the contents of the statement, including whether the statements minimize the responsibility of the declarant or spread or shift the blame; other possible motivations of the declarant, including improper motive such as to lie, curry favor, or distort the truth; the nature and degree of the "against interest" aspect of

8

the statements, including the extent to which the declarant apprehends that the making of the statement is likely to actually subject him to criminal liability; the circumstances or events that prompted the statements, including whether they were made with the encouragement or at the request of a listener; the timing of the statement in relation to events described; the declarant's relationship to the defendant; and any other factors bearing upon the reliability of the statement at issue.

Id. at 525-26.

Here, Trial Counsel subpoenaed Mr. Dedes to testify, but he was unavailable as he asserted his 5th Amendment right against self-incrimination. (N.T.1. 85). The Hempel letters were contrary to Mr. Dedes' interests and would have exposed him to criminal liability. However, the statements Mr. Hempel transcribed were not supported by corroborating circumstances that clearly indicated its trustworthiness. To the contrary, Mr. Hempel may have fabricated the letters for his benefit to obtain consideration from the Commonwealth in his own criminal matters. Mr. Hempel also admitted he would commit perjury if the Commonwealth did not provide consideration in his own case. Moreover, Mr. Dedes may have been motivated to enhance his image before other criminals, as he allegedly told Mr. Hempel the story while they were cellmates. See Commonwealth v. Robins, 812 A.2d 514 (Pa. 2002) (rejecting as untrustworthy statements of non-testifying alleged accomplice made to cellmate and during sting operation tying defendant to burglary; statements made one year after crime and in settings where declarant may have been trying to enhance his image before other criminals). Thus, the Hempel letters lacked sufficient indicia of reliability and would not have been admissible under Pa.R.E. 804(b)(3).

Additionally, Trial Counsel had a reasonable basis for her action, as calling Mr. Hempel as a witness to admit the Hempel letters would have harmed, rather than helped the Defendant's case. Mr. Hempel would have been subject to cross examination, allowing the Commonwealth

9

to impeach him on his statement that he would perjure himself if he did not receive any consideration. This would not only have severely damaged Mr. Hempel's credibility, but the credibility of the Defendant's case in general. Furthermore, Defendant did not suffer actual prejudice, as establishing which of the two accomplices beat and murdered the Victim would not have changed the outcome of the case, due to the nature of accomplice liability. Therefore, Defendant's claim is without merit.

### i. Trial Counsel's Conflict of Interest

Defendant's claim that Trial Counsel was ineffective for not disclosing an alleged conflict of interest to Defendant is without merit. Trial Counsel was representing Mr. Hempel on parole, while preparing Defendant's case for trial. (N.T.1. 69-75). Mr. Hempel originally offered the information against Mr. Dedes, in the hope that the Commonwealth would call him as a witness and give him consideration in order to make parole. However, Mr. Dedes pled guilty and was sentenced before Defendant's trial. Defendant now claims that if Mr. Hempel testified for the Defense, such an action would hurt his chances of making parole, since doing so would be adverse to the Commonwealth's interests.[1] Accordingly, counsel representing Mr. Hempel "would have counseled him against testifying on behalf of Petitioner, since such testimony would have inclined the Commonwealth to help Hempel, and likely would have had the contrary result." (Defendant's Amended PCRA Petition at 38, November 17, 2020).

---

[1] It should be noted that Defendant first claimed that Trial Counsel's conflict of interest forbade her from calling Mr. Hempel, as doing so might have lessened the chances for the Commonwealth to help him in his upcoming criminal matters. However, after the PCRA hearing, Defendant changed his argument to calling Mr. Hempel as a witness on Defendant's behalf would jeopardize Mr. Hempel's chances of parole, since doing so would be averse to the Commonwealth's interests. See Amended PCRA Petition at 37-38; Supplement/Amendment to Amended PCRA Petition at 12-13 (November 28, 2021).

10

For the purposes of establishing a claim of ineffectiveness of counsel based on an alleged conflict of interest, Defendant must show that counsel actively represented conflicting interests and the conflict adversely affected counsel's performance. Commonwealth v. Padilla, 80 A.3d 1238, 1248 (Pa. 2013). Attorney conflict of interests are governed by Pennsylvania Rule of Professional Conduct 1.7(a):

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Pa.R.P.C. 1.7(a). Rule 1.8 further specifies:

> (b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these rules.

Pa.R.P.C. 1.8(b). A defendant "cannot prevail on a conflict of interest claim absent a showing of actual prejudice." Commonwealth v. Collins, 957 A.2d 237, 251 (Pa. 2008) (citing Commonwealth v. Karenbauer, 715 A.2d 1086, 1094 (Pa. 1998) (counsel did not actively represent conflicting interests where concurrent representation of two defendants lasted up to five days, and no possibility of trial counsel calling former client, thus, claim based on appearance of conflict of interest lacked merit)). "Clients' interests actually conflict when 'during the course of representation' they 'diverge with respect to a material factual or legal issue or to a course of action.'" Id. (quoting Commonwealth v. Padden, 783 A.2d 299, 310 (Pa. Super. 2001)).

11

Here, Trial Counsel did not have an actual conflict, as the parole board rules on parole, not the District Attorney's Office. While the District Attorney's Office can object to parole, the final decision rests with the parole board. Mr. Hempel testifying for the Defense would not have influenced the parole board's decision or caused the Commonwealth to object/help at a parole hearing.

Further, Defendant's argument that Trial Counsel did not call Mr. Hempel because doing so may have lessened his chances for the Commonwealth to possibly help him or lessened his chances of making parole, did not materially limit Trial Counsel's responsibilities. There was no divergence of a material factual, legal issue, or course of action between Mr. Hempel and the Defendant over the possibility of help from the Commonwealth for a parole hearing.

Furthermore, Defendant did not suffer any prejudice, as calling Mr. Hempel as a witness to admit the Hempel letters would have harmed Defendant's case, rather than provide a benefit. Mr. Hempel would have been subject to cross examination, allowing the Commonwealth to impeach him on his statement that he would perjure himself if he did not receive any consideration. This would not only have severely damaged Mr. Hempel's credibility, but the credibility of the Defendant's case in general. Additionally, the Hempel letters were not admissible. See arguments *supra*.

### b. **Ineffectiveness for Withdrawing Motion for Defense Expert**

Defendant's claim that Trial Counsel was ineffective for withdrawing her motion to call a defense expert is without merit. During trial, the Prosecution admitted a recording of a conversation between the Defendant and his father, where the Defendant discussed taking a possible plea deal. The phone call proceeded as follows:

12

**JUDON**: That's all.

**FATHER**: Yeah, yeah, yeah. Because I think what's going to happen is – they don't have nothing.

**JUDON**: Um-hum.

**FATHER**: That's why there's a deal.

**JUDON**: Yeah.

**FATHER**: Now, is that worth it?

**JUDON**: Yeah, it depends what they tell me.

**FATHER**: You know because when you say deal, you're admitting.

**JUDON**: Yeah. But see, the deal – the deal has to be a deal. It has – because a 20 to 40 is not a deal to me. It's not a deal because I'm young right now, even though I'm still going to be young when I get out, I don't want to hear that.

**FATHER**: Right.

**JUDON**: There's a lot of people that might not be around by the time I get out. I don't want to hear that. I don't want to hear that. So 20 to 40 is not a deal to me. 15 to 30 is not a deal to me.

**FATHER**: Right.

**JUDON**: 10 to 20 is barely a deal.

**FATHER**: Yeah.

**JUDON**: I'll take anything under 10, nothing more, nothing more.

**FATHER**: Well, you're also gonna have the time served, too.

**JUDON**: Yeah, but nothing more, nothing more than ten, nothing more. That's it.

**FATHER**: We'll, that's what I'm thinking -

(T.T. 837-39). Based on the recorded conversation, Trial Counsel was going to call Thomas Marsillio, Esquire, (hereinafter "Attorney Marsillio") as an expert witness at trial to educate the jury about plea negotiations and how the length of time a defendant is facing may inform those discussions. (T.T. 987-1004). Trial Counsel subsequently withdrew her request to call the expert when the Court agreed to take judicial notice that felony murder carried a life sentence. (T.T. 990-1004).

When calling an expert, the Pennsylvania Rules of Evidence states:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. "Expert testimony is permitted as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the

13

average layman. Conversely, expert testimony is not admissible where the issue involves a matter of common knowledge." Commonwealth v. Carter, 111 A.3d, 1221, 1222 (Pa. Super. 2015) (citing Commonwealth v. Lopez, 854 A.2d 465, 470 (Pa. 2004)).

To satisfy the arguable merit requirement based upon trial counsel's failure to call an expert witness, the defendant must prove that

> an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. Commonwealth v. Chmiel, 612 Pa. 333, 30 A.3d 1111, 1143 (2011); Commonwealth v. Gibson, 597 Pa. 402, 951 A.2d 1110, 1133 (2008). Prejudice in this respect requires the petitioner to "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Commonwealth v. Sneed, 616 Pa. 1, 45 A.3d 1096, 1109 (2012) (quoting Gibson, 951 A.2d at 1134). Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses "would have been helpful to the defense." Id. (quoting Commonwealth v. Auker, 545 Pa. 521, 681 A.2d 1305, 1319 (1996)).

Commonwealth v. Williams, 141 A.3d 440, 460 (Pa. 2016).

Here, Attorney Marsillio never testified whether he was willing and available to testify at trial as PCRA counsel never called him as a witness at the PCRA hearing. Further, the Superior Court stated in their opinion that it was possible to interpret the conversation in two ways, first as the Defendant considering his options, and second as an admission of guilt. Commonwealth v. Judon, 213 MDA 2014, p. 7 (Pa. Super. Dec. 24, 2014). Having an expert testify that the Defendant was considering his options was unnecessary, as such testimony would have been within the subject matter of a lay person. Additionally, it can be assumed that when a defendant is taking a plea deal, he would be pleading guilty to the crimes charged.

Furthermore, the Defendant was not prejudiced by the absence of the expert, as the interpretation of the Defendant's testimony as an admission was cumulative. The Superior Court stated that the evidence was cumulative of three other witnesses – Shawn Jackson, Tanya

14

Stimpson, and Shaun Butler, who "testified that Judon admitted robbing, kidnapping and/or beating Reznick." Id. at 7-8. The Superior Court also cited Defendant's appellate brief, stating that even "[Defendant's] brief admits: '[N]o party to this appeal disputes [that Judon] was present in the vehicle [in which Reznick was kidnapped and locked in the trunk].'" Id. at 8 (quoting Def. Appellate Brief, p. 8). Calling an expert would not have changed the outcome of the proceedings in light of the above evidence.

Moreover, it was Trial Counsel's trial strategy not to call an expert witness, as the purpose of the expert "was so the jury could hear the penalty of what the sentencing would be for the charge... and it would be something they may think about when they're deliberating." (N.T.1. 99). Trial Counsel's main objective was to have the jury hear that Defendant was facing a life sentence. Trial Counsel did not need the expert after the Court agreed to take judicial notice of the life sentence. She then used the fact that Defendant was facing a life sentence throughout her closing argument to the jury, which was a reasonable trial strategy. Therefore, Defendant's claim is without merit.

### c. Post-Hearing Claim of Ineffectiveness for Failing to State Proper Basis for Expert Witness

Defendant's claim that Trial Counsel was ineffective for failing to properly advocate her position regarding the need for the expert witness is without merit. The Defendant employs a hindsight analysis when he claims that Trial Counsel was ineffective for not analogizing the purpose for calling an expert witness to flight instructions. For the reasons stated in the above analysis, making the aforementioned argument would not have changed the outcome of the trial and his claim lacks arguable merit. Therefore, Defendant's claim is without merit.

15

### d. Post-Hearing Claim of Ineffectiveness for Failing to Request Instruction Regarding Plea Discussions

Defendant's claim that Trial Counsel was ineffective for failing to request a novel jury instruction, mirroring the flight instruction, is without merit. A court looks to the following principles when deciding whether a jury instruction is warranted:

> Defendants are generally entitled to instructions that they have requested and that are supported by the evidence. Commonwealth v. Markman, 591 Pa. 249, 916 A.2d 586, 607 (2007); Commonwealth v. DeMarco, 570 Pa. 263, 809 A.2d 256, 261 (2002) ("Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record."); Commonwealth v. Browdie, 543 Pa. 337, 671 A.2d 668, 673–74 (1996) ("[W]e hold that a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict."). We have explained that the reason for this rule is that "instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." Commonwealth v. Taylor, 583 Pa. 170, 876 A.2d 916, 925–26 (2005) (quoting Commonwealth v. White, 490 Pa. 179, 415 A.2d 399, 400 (1980)). A criminal defendant must, therefore, "establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial." Id. (citing Commonwealth v. Carter, 502 Pa. 433, 466 A.2d 1328, 1332–33 (1983)).

Charleston, 94 A.3d at 1026 (quoting Commonwealth v. Hairston, 84 A.3d 657, 668 (Pa. 2014).

Here, the recording of the Defendant did not constitute enough evidence to support a novel jury instruction and there were no other facts on the record to support any argument for a jury instruction on plea discussions. Further, there are no standard jury instructions for plea discussions, and so Defendant employs a hindsight analysis when he claims that Trial Counsel should have created novel jury instructions by analogizing the flight instruction to plea discussions. Furthermore, for the reasons stated in the above analysis, requesting jury instructions would not have changed the outcome of the trial. Therefore, Defendant's claim is without merit.

16

### e. Post-Hearing Claim of Appellate Counsel's Ineffectiveness for Failing to Raise Expert Witness Issue

Defendant's claim that Appellate Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness for the expert witness issue on direct appeal is without merit. The Pennsylvania Supreme Court held that

> a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity… Simply stated, a claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness.

Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002).

Further, the Pennsylvania Supreme Court has "expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions." Commonwealth v. Spotz, 870 A.2d 822, 832 (Pa. 2005); see, e.g., Commonwealth v. Gribble, 863 A.2d 455, 473-74 (Pa. 2004) (error for PCRA court to hold counsel ineffective in permitting client to waive penalty phase jury without first holding evidentiary hearing); Commonwealth v. Hughes, 865 A.2d 761, 799 (Pa.2004) (although there did not appear to be a reason for counsel's failure to pursue claim of arguable merit, since there had been no hearing, "we cannot discern whether a reasonable basis existed for counsel's omission. In such circumstance, this Court has declined to divine, in the first instance on appellate review, whether counsel's actions were reasonably based") (citing Commonwealth v. Duffey, 855 A.2d 764, 775 (Pa.2004)). In the absence of testimony from counsel, the court "should refrain from gleaning whether ... a reasonable basis exists." Duffey, 855 A.2d at 775 (citing Commonwealth v. McGill, 574 Pa. 574, 832 A.2d 1014, 1022 (2003)) (court should

17

resolve question of reasonable basis for counsel's actions in absence of evidentiary hearing only when answer is clear from record).

Here, Appellate Counsel could not raise Trial Counsel's ineffectiveness on direct appeal, as Defendant had to wait to make an ineffectiveness claim under the PCRA. Additionally, Defendant never called Appellate Counsel as a witness at the PCRA hearing to determine the reasonable basis and strategy for Appellate Counsel's actions, frustrating any attempt to argue that Appellate Counsel was ineffective. Therefore, Defendant's claim is without merit.

### III. Trial Counsel's Ineffectiveness Relating to This Court's Jury Instructions

#### a. Ineffectiveness for Directing the Jury to Find that Petitioner's Failure to Render Aid to the Victim Established His Criminal Liability and for Not Requesting a Charge that Such Failure Could Establish Only Involuntary Manslaughter

Defendant's claim that Trial Counsel was ineffective for directing the jury to find that his failure to render aid to the Victim established his criminal liability and for not requesting a charge that such failure could establish only involuntary manslaughter is without merit. In Trial Counsel's closing argument, she stated:

> You heard about Mr. Jackson's 10,000-dollar reward. You heard about Miss Stimpson, gee, running around with open charges yet; Shaun Butler, the same scenario, facing a robbery charge of his own, here testifying. People who testified for motivation of themselves, giving information after they read it in the newspaper. So not – as both Mr. Jackson and Miss Stimpson said, they didn't come forward as soon as they heard it. And you know what, neither did Mr. Judon call the police. He didn't call the police after it happened. So would he be guilty of not giving the proper duty or aid after he witnessed someone else doing these acts? Possibly. But the Commonwealth's witnesses, they didn't come forward to do anything in this case until it benefited them.

(T.T. 1015-16).

18

Defendant misconstrues the plain text of the transcript, as Trial Counsel did not use "guilty" as a legal term of art. Trial Counsel denied saying that the Defendant was legally guilty of involuntary manslaughter, and a plain reading of the transcript confirms that was not what she said or meant. (N.T.1. 62). Defendant was not prejudiced, as the transcript shows that Trial Counsel said that the Defendant was possibly "guilty" of failing to aid the Victim after he was hurt by someone else, using "guilty" as a rhetorical trope. This is the most logical interpretation, and consistent with her comparing Defendant to other witnesses who also failed to call the police.

> Twenty-two pages later in the transcript, Trial Counsel said
>
> And remember, Mitchell Dedes goes to the extent of shooting himself with a gun for his own alibi, lying to the police. We didn't hear that Mr. Judon did anything. And I agree that he didn't call 911. He didn't. So does that make him more of an involuntary manslaughter if he failed to do his duty to surrender any aid? Like I said, second degree is life.

(T.T. 1037). Trial Counsel asked a rhetorical question, putting the jury on notice that failing to call 911 would only be relevant to an involuntary manslaughter charge, which was not at issue in this case. She then reminded the jury that the Defendant was facing a life sentence over not calling 911. Trial Counsel stating twice that Defendant failed to act would not have changed the outcome of the proceedings. Further, this Court instructed the jury that the arguments of counsel are not evidence, as well as on the charged crimes. See Commonwealth v. Stokes, 839 A.2d 226, 233 (Pa. 2003) (a court's instruction that a prosecutor's comments do not constitute evidence was sufficient to remove any prejudice). Moreover, the Defendant did not present any evidence showing that the jury failed to follow the Court's instructions. See Commonwealth v. Spotz, 896 A.2d 1191, 1224 (Pa. 2006) (the law presumes that the jury will follow the court's instructions).

Defendant also claims that Trial Counsel was ineffective for not requesting a jury instruction that a failure to act could only establish involuntary manslaughter, however, as stated above, Trial Counsel did not concede Defendant's criminal liability. Therefore, Defendant's claim is without merit.

### b. Ineffectiveness for Failing to Object to Erroneous Accomplice Charge for Felony Murder

Defendant's claim that Trial Counsel was ineffective for failing to object to an accomplice charge for felony murder is without merit. The trial court is "not required to deliver its instructions... in a prescribed manner... The sole requirement is that the instructions properly and adequately assess the law." Commonwealth v. Simpson, 754 A.2d 1264, 12765-76 (Pa. 2000) (citing Commonwealth v. Thompson, 674 A.2d 217, 222–23 (Pa. 1996).

Here, this Court addressed accomplice liability specific to felony murder during the charge to the jury:

> The person is an accomplice if he on his own acts to help the other person commit a crime. More specifically, the defendant is an accomplice of another for a particular crime if the following two elements are proved beyond a reasonable doubt, that the defendant had the intent of promoting or facilitating the commission of that crime, and that the defendant solicits or commands or encourages or requests the other person to commit or aids or agrees to aid or attempts to aid the other person in planning or committing it.

> It is important to understand that a person is not an accomplice merely because he is present when the crime is committed or knows that the crime is being committed. A person who is an accomplice will not be responsible for a crime if and only if the person, before the other person commits the crime, either stops his or her own efforts to promote or facilitate the commission of the crime and either wholly deprives his or her previous efforts of effectiveness in the commission of the crime, or gives timely warning to the law enforcement authorities, or otherwise makes a proper effort to prevent the commission of the crime. (T.T. 1100-01).

* * *

20

You may also find the defendant guilty of felony murder as an accomplice to the commission of robbery or kidnapping if you find that the following four elements have been proven beyond a reasonable doubt: First, that Mitchel Dedes caused the death of Aaron Reznick; second, that Mitchell Dedes did so while he and the defendant were partners in committing robbery or kidnapping; third, that Mitchell Dedes did the act that caused the death of Aaron Reznick in furtherance of the robbery or kidnapping; and fourth, that the defendant was acting with malice.

You may find that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that he and Mitchell Dedes were partners in committing robbery or kidnapping. Because robbery and kidnapping are crimes inherently dangerous to human life, there does not have to be any other proof of malice.

Going back to the requirement that the defendant and Mitchell Dedes were partners in committing - I'm sorry. Going back to the requirement that the defendant and Mitchell Dedes were partners in committing the robbery or kidnapping, I instruct you that they were partners if they were both principals or one of them was a principal and the other was an accomplice. I instruct you that they were also partners if they conspired to commit the robbery or kidnapping.

(T.T. 1117-18).

This Court properly assessed the law, as the Court charged the jury on accomplice and conspiracy liability, taken verbatim from § 8.306(a) of the Pennsylvania Suggested Standard Criminal Jury Instructions. This Court then used the aforementioned definitions to instruct the jury on accomplice liability as it related to felony murder. An objection from Trial Counsel would not have changed the outcome of the proceedings, as the instructions coherently and unambiguously informed the jury that the Commonwealth needed to establish that Defendant and Mr. Dedes were partners in committing the robbery or kidnapping; by acting as principles, principles and an accomplice, or by conspiring to commit the crimes. Though "accomplice" was used in one of the definitions of partner, the definition of accomplice was provided earlier in the charge. The instructions were clear enough to enable the jury to understand accomplice liability. Therefore, Defendant's claim is without merit.

21

## IV. Trial and Appellate Counsels' Ineffective for (1) Allowing Inadmissible Evidence Tending to Show Petitioner to be a person of Bad Moral Character; and (2) Failing to Present Evidence of His Good Character.

### a. Ineffectiveness for "Opening the Door" to Permit the Prosecutor to Inform the Jury that Petitioner, Like the Co-Defendant, was a "Bad Guy," who "You Don't Want to Mess With"

Defendant's claim that Trial Counsel was ineffective for "opening the door" for the Prosecutor's comments to the jury is without merit. Generally, a defendant "cannot obtain post-conviction review of claims that were previously litigated by alleging ineffectiveness of prior counsel and presenting new theories of relief to support a previously litigated claim." Commonwealth v. Miller, 746 A.2d 592, 602, n.9 (Pa. 2000). Here, Defendant already argued on direct appeal, as he attempts to argue now, that the Prosecutor impermissibly referenced Defendant's character during closing. Commonwealth v. Breon Davonne Judon, No. 213 MDA 2014 (Pa. Super. December 24, 2014). However, Defendant now states that Trial Counsel was ineffective for "opening the door" to allow such comments. Id. Thus, this argument has been previously litigated for purposes of the PCRA.

Regardless, the comments by Defendant and response by the Prosecutor in closing did not have any adverse effect on the outcome of the proceedings when compared to the overwhelming amount of credible evidence against the Defendant. Further, the comments would not have changed the outcome of the proceedings as the Prosecutor did not inform the jury of any bad character evidence, only that they were "not allowed" to comment on that evidence. (T.T. 1041). The jury did not hear any evidence of bad character, thus did not consider such evidence.

22

Additionally, in the charge to the jury, this Court repeatedly emphasized that the jury was the sole judge of the witnesses' credibility and that the jury must make their decision based upon their recollection of the facts. This Court instructed the jury of the following:

Ladies and gentlemen, the speeches of counsel are not part of evidence. And you should not consider them as such... You should be guided by each lawyer's arguments to the extent they are supported by evidence insofar as they aid you in applying your own reason and common sense.

However, you are not required to accept the arguments of either lawyer. It is for you and you alone to decide the case based on the evidence as it was presented from the witness stand and in accordance with the instructions I am now giving you.

I will first speak to you about witnesses, credibility of witnesses. As the judges of facts, you are the sole judges of credibility of witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness's testimony and decide whether to believe all or part or none of that testimony.

\*     \*     \*

As sole judges of credibility and fact, you the jurors are responsible to give the testimony of every witness and all other evidence whatever credibility and weight you think it deserves.

(T.T. 1085-87, 1088). The Court instructed the jury that the arguments of counsel are not evidence. See Stokes, 839 A.2d at 233 (a court's instruction that a prosecutor's comments do not constitute evidence was sufficient to remove any prejudice). Moreover, the Defendant did not present any evidence showing that the jury failed to follow the Court's instructions. See Spotz, 896 A.2d at 1224 (the law presumes that the jury will follow the court's instructions). Therefore, Defendant's claim is without merit.

23

### b.  Ineffectiveness for Failing to Introduce Good Character Evidence

Defendant's claim that Trial Counsel was ineffective for failing to introduce good character evidence is without merit. Defendant claims that Rose Anne Collins (hereinafter "Ms. Collins"), Defendant's mother; Rosa Santiago (hereinafter "Ms. Santiago"), a bus operator who works for the Metropolitan Transit Authority in New York; and Betsy Jimenez (hereinafter "Ms. Jiminez"), the mother of Defendant's child; would have testified to Defendant's reputation as a peaceful and law-abiding person. (N.T.1. 42-48).

If a failure to call a potential witness claim is raised, a PCRA petitioner satisfies the performance and prejudice requirements of Strickland, by establishing the following:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Washington, 927 A.2d at 599. "A witness's invocation of his Fifth Amendment rights renders him unavailable." Fiore, 780 A.2d at 711-12 (citing Franklin, 580 A.2d at 29). "Counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would be helpful to the defense." Sneed, 45 A.3d at 1109. Failing to call a witness does not amount to *per se* ineffectiveness of counsel since such a decision is normally made as part of trial strategy. Id. To demonstrate prejudice as required by Strickland, Defendant would have to show how the testimony of the uncalled witness would have been helpful to his defense. Id.

Here, regarding the first prong, the three witnesses existed at the time of trial. (N.T.1. 42-48). For the second and fourth prongs, Ms. Santiago and Ms. Jiminez were available and willing to testify for the defense at the time of trial. (N.T.1. 44-48). There was no evidence presented at the PCRA hearing that Ms. Collins was available and willing to testify for the defense at the time

24

of trial. (N.T.1. 42-44). Regarding the third prong, Trial Counsel did not know of the three witnesses. (N.T.2. 20). Trial Counsel asked Defendant to provide her with "witnesses that then [she] would be able to interview and determine if they were relevant" and helpful to the case, however Defendant "provided no witnesses." (N.T.2. 20). Defendant was also interviewed by the defense's private investigator and still did not provide a list of witnesses when asked. (N.T.2. 20). Trial Counsel could not have known or have interviewed the witnesses, if she did not have their names or contact information. See Commonwealth v. Marrero, 748 A.2d 202, 204 (Pa. 2000) (defendant's refusal to cooperate with trial counsel precluded any reasonable investigation of possible mitigative witnesses). Defendant did not dispute this fact.

For the fifth prong, the absence of the three witness' testimony was not so prejudicial as to have Defendant a fair trial. Ms. Collins and Ms. Jimenez have a personal connection and bias in favor of the Defendant, while Ms. Jiminez also has motive to keep the Defendant out of jail; which the Commonwealth could easily have exploited on cross examination. It was unclear from Ms. Santiago's testimony how well she knew the Defendant, if her familiarity was only giving Defendant bus rides or a close family friend. Even so, obviously biased character witnesses testifying that Defendant was a peaceful and law-abiding person would have been inconsequential compared to the overwhelming amount of credible evidence presented by the Commonwealth and would not have altered the jury's credibility determinations. See Commonwealth v. Medina, 209 A.3d 992, 999 (Pa. Super. 2019) (When Commonwealth presented overwhelming credible evidence, inclusion of character witness testimony would not have altered jury's determinations and outcome of trial). Specifically, Shawn Jackson, Tanya Stimpson, and Shaun Butler, testified that Defendant admitted robbing, kidnapping and/or beating the Victim; as well as the Defendant's own admission. The inclusion of character

25

witness testimony would not have altered the jury's credibility determination and, thus, the outcome of the trial.

Further, it was a reasonable trial strategy not to call character witnesses, as doing so would have opened the door for the Commonwealth to present bad character evidence. The Commonwealth could have crossed the character witnesses on the previously redacted, damning portions of Defendant's taped statements, which would have caused much more harm to Defendant than the testimony of three biased character witnesses. Thus, it was reasonable trial strategy not to call character witnesses, which aided Defendant's case. Therefore, Defendant's claim is without merit.

### c. Trial and Appellate Counsel Were Not Ineffective for Failing to Properly Challenge Rank Propensity Evidence, in the Form of Petitioner's Possession of a Gun, and His Alleged Drug Dealing

#### i. Trial Counsel's Failure to Object to Other Crimes Evidence Not Charged in this Case

Defendant's claim that Trial Counsel was ineffective for failing to object to violations of the Uniform Firearms Act not charged in this case is without merit. Defendant filed a pre-trial motion to exclude evidence of his possession of a 9 millimeter Beretta handgun during a video recorded conversation with Shawn Jackson (hereinafter "Mr. Jackson"). (Court of Common Pleas Opinion and Order, September 26, 2013). This Court denied the motion as there was a justifiable inference that Defendant used the handgun during the robbery, kidnapping, and murder of the victim. At trial, the Commonwealth played a recorded conversation between Defendant and Mr. Jackson, where Defendant raised his sweatshirt, exposing a 9 millimeter handgun to Mr. Jackson. (T.T. 597). Defendant then told Mr. Jackson that it was a 9 millimeter handgun. (T.T. 617). Detective Darryl Ledger testified that the 9 millimeter handgun found in

26

Defendant's basement had the serial number scraped off. (T.T. 642). Detective David Bunchalk also testified that Defendant possessed a 9 millimeter handgun with the serial numbers scraped off, which Defendant admitted to possessing on the night of the incident, but did not utilize it. (T.T. 892-93). Detective Bunchalk also said that it was illegal to possess a firearm with the serial number scraped off, and that Defendant was too young to possess a firearm. (T.T. 892-93).

An objection from Trial Counsel to the possession of the firearm with an obliterated serial number would not have changed the outcome of the trial as Defendant was not charged with violating the uniform firearms act. There were no elements of possessing a gun with an obliterated serial number in any of the crimes Defendant was charged and had no bearing on the trial. Even though the evidence may have damaged Defendant's character, it was inconsequential compared to the overwhelming amount of credible evidence presented by the Commonwealth, including the Defendant's own admissions.

Further, testimony of Defendant's possession of the firearm after the murder did not prejudice the Defendant, as there was already testimony that the co-Defendant, Mr. Dedes, possessed a .44 magnum firearm during the murder of the Victim. The jury did not convict the Defendant of all charges because he possessed a firearm with an obliterated serial number after the murder. Furthermore, Trial Counsel would not have been able to unring the bell after the jury already heard the evidence. Trial Counsel would not have wanted to object, directing the jury's attention to the evidence, if the evidence had no bearing on the actual crimes charged. Therefore, Defendant's claim is without merit.

## ii. **Trial Counsel's Failure to Renew the Objection to the Drug Evidence**

Defendant's claim that Trial Counsel was ineffective for failing to renew the objection to drug evidence is without merit. Defendant filed a pre-trial motion to preclude evidence that a witness introduced the Victim to the Defendant to purchase crack cocaine. This Court denied the motion, as the evidence served to establish a motive for the crime and satisfied the *res gestae* exception. (Court of Common Pleas Opinion and Order, September 26, 2013). At trial, Charles Wing (hereinafter "Mr. Wing") testified to multiple encounters with the victim. During Mr. Wing's second encounter with the Victim, the Victim asked Mr. Wing if he knew anyone to "buy any pot from. Of course, I thought of [Defendant]," however, Mr. Wing could not obtain any marijuana. (T.T. 529). During Mr. Wing's third encounter, the Victim called Mr. Wing, in an attempt to sell an iPhone and Mr. Wing "thought of [Defendant] also on that occasion." (T.T. 529). Mr. Wing then introduced the Victim to the Defendant, which led to the Victim's murder. (T.T. 529-30). Defendant argues that Trial Counsel should have moved to strike the evidence of Defendant being in the business of selling drugs after Mr. Wing's testimony revealed that he introduced the Victim to the Defendant to sell the Victim's iPhone.

An objection to Defendant selling drugs, after the jury already heard the testimony, would not have changed the outcome of the trial, as the Defendant was not charged with any crimes involving drugs. There were no elements of possession of drugs or intent to deliver in any of the charged crimes against Defendant and had no bearing on the trial. Even though the evidence may have damaged Defendant's character, it was inconsequential compared to the overwhelming amount of credible evidence presented by the Commonwealth, including the Defendant's own admissions. The jury did not convict the Defendant because of one sentence that the Defendant sold marijuana. Further, Trial Counsel would not have been able to unring

28

the bell after the jury already heard the evidence. Trial Counsel would not have wanted to make an objection, directing the jury's attention to the evidence, if the evidence had no bearing on the actual case or crimes charged. Therefore, Defendant's claim is without merit.

### iii. Appellate Counsel's Ineffectiveness for Failing to Challenge this Court's Pre-Trial Ruling Admitting the Gun Evidence // Post-Hearing Ineffectiveness Claim for Failing to Renew Objection to Gun Evidence

Defendant's claim that Appellate and Trial Counsel were ineffective for failing to challenge the pre-trial ruling admitting the gun evidence is without merit. The Pennsylvania Supreme Court has "expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions." Spotz, 870 A.2d at 832; see, e.g., Gribble, 863 A.2d at 473-74 (error for PCRA court to hold counsel ineffective in permitting client to waive penalty phase jury without first holding evidentiary hearing); Hughes, 865 A.2d at 799 (although there did not appear to be a reason for counsel's failure to pursue claim of arguable merit, since there had been no hearing, "we cannot discern whether a reasonable basis existed for counsel's omission. In such circumstance, this Court has declined to divine, in the first instance on appellate review, whether counsel's actions were reasonably based") (citing Duffey, 855 A.2d at 775). In the absence of testimony from counsel, the court "should refrain from gleaning whether ... a reasonable basis exists." Duffey, 855 A.2d at 775 (citing McGill, 832 A.2d at 1022) (court should resolve question of reasonable basis for counsel's actions in absence of evidentiary hearing only when answer is clear from record).

Here, Defendant never called Appellate Counsel as a witness at the PCRA hearing to determine the reasonable basis and strategy for Appellate Counsel's actions, frustrating any

attempt to argue that Appellate Counsel was ineffective. Regardless, as stated in the preceding paragraphs, the testimony of Defendant's possession of a 9 millimeter firearm would not have changed the outcome of the trial when compared to the overwhelming amount of credible evidence presented by the Commonwealth. Therefore, Defendant's claim is without merit.

### iv. Trial Counsel's Ineffectiveness for Failing to Request a Limiting Instruction

Defendant's claim that Trial Counsel was ineffective for failing to request limiting instructions on the *in limine* rulings of drug dealing and 9 millimeter handgun is without merit. Limiting instructions would not have changed the outcome of the trial, as stated in the above analysis, the one sentence of drug dealing and the testimony of Defendant's possession of a 9 millimeter handgun did not go to any of the elements of charged against the Defendant. Further, offering limiting instructions to the jury would have unnecessarily drawn attention to the drug dealing and handgun. Therefore, Defendant's claim is without merit.

## V. Cumulative Prejudicial Effect of the Errors

The Defendant's claim that the cumulative impact of the above-described errors should result in a new trial is without merit. The Supreme Court of Pennsylvania held that "no number of failed [] claims may collectively warrant relief if they fail to do so individually," which applies to claims that fail due to lack of arguable merit. Commonwealth v. Spotz, 18 A.3d 244, 321 (Pa. 2011) (quoting Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009)). "When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed." Id. (quoting Johnson, 966 A.2d at 532).

30

Here, Defendant's claims I – IV(b) failed due to lack of merit, thus there is no basis for a cumulative error claim on those claims. Defendant's claims IV(c)(i)-(iv) failed based on lack of prejudice, however, the cumulative effect of said claims did not prejudice the Defendant. The four claims are legally independent, but similarly involve the same facts that go to the Defendant's character. The one sentence from trial that Defendant had marijuana to sell, and the testimony that Defendant possessed a firearm with an obliterated serial number after the murder did not cumulatively prejudice the Defendant. When taken together, they had no bearing on the elements of the charges brought against the Defendant, only minimally affecting his character. These statements hardly affected Defendant's character and would not have changed the outcome of the trial, as the Commonwealth produced a significant amount of overwhelming credible evidence against the Defendant, including the Defendant's own admissions to the crimes. To the extent that this Court referred to prejudice principles in disposing of Defendant's cognizable claims of ineffectiveness, we are satisfied that, even if we consider the cumulative effect of his claims, Defendant is not entitled to relief. Therefore, Defendant's Petition for Post Conviction Relief raises no issues of merit and must be denied.

BY THE COURT:

_____
RICHARD M. HUGHES, III, J.

31